STATE OF NEW YORK et al., Plaintiffs, v PHILIP MORRIS INCORPORATED et al., Respondents, and CAROLINA TOBACCO COMPANY et al., Appellants, et al., Defendants. [877 NYS2d 291]—

Appeal from order, Supreme Court, New York County (Charles E. Ramos, J.), entered January 22, 2008, which, to the extent appealed from, granted motions to compel arbitration, unanimously dismissed, without costs.

This declaratory judgment action was commenced by the State against numerous cigarette manufacturers and relates to the tobacco settlement reached between, among others, the State and certain cigarette manufacturers. In another appeal concerning the settlement, the Court of Appeals provided the following narrative regarding the settlement:

"In 1998, the Attorneys General of 46 states (including New York) and five island territories and the Corporation Counsel of the District of Columbia signed a Master Settlement Agreement (MSA) with counsel for the largest tobacco manufacturers in the United States. The MSA was approved, as to New York State, by Supreme Court. The claims brought against the tobacco manufacturers included wrongful marketing and advertising of cigarettes and other tobacco products. Various states sought damages based on the costs of treating smoking-related illnesses. In exchange for a release of liability, the tobacco manufacturers agreed to make annual payments, to be allocated among the Settling States. They also agreed to extensive marketing and advertising restrictions. The Original Participating Manufacturers, as they are known, were later joined by more than 40 smaller tobacco companies, referred to as the Subsequent Participating Manufacturers (SPMs) . . . .

"Not all U.S. tobacco manufacturers have joined the MSA. In order to neutralize cost disadvantages suffered by the Participating Manufacturers (PMs) relative to Non-Participating Manufacturers (NPMs), the MSA provides the Settling States with a strong incentive to enact statutes requiring NPMs to make annual payments toward the costs of treating smoking-related illnesses equivalent to those made by the PMs. The MSA sets out a Model Statute, which, if appropriately enacted, 'shall constitute a Qualifying Statute.' If a Settling State fails to enact, or does not diligently enforce, a Qualifying Statute, PM payments to that state may be subject to the Non-Participating Manufacturer adjustment (NPM adjustment).

"In brief, NPM adjustment can be applied to reduce PM payments to a Settling State if (1) PMs collectively lost market share to NPMs in the preceding year and (2) disadvantages resulting from the MSA were a 'significant factor' contributing to that loss. But payment to a Settling State is *not* subject to the NPM adjustment 'if such Settling State continuously had a Qualifying Statute . . . in full force and effect during the entire calendar year immediately preceding the year in which the payment in question is due, and diligently enforced the provisions of such statute during such entire calendar year.'

"Settling States that have diligently enforced their respective

Qualifying Statutes are not subject to the NPM adjustment; instead, the adjustment is to be reallocated pro rata among Settling States that are subject to the NPM adjustment, reducing the payments they receive. A decision regarding one Settling State's enforcement of its Qualifying Statute could therefore potentially affect the calculation of amounts due to all other Settling States" (*State of New York v Philip Morris Inc.*, 8 NY3d 574, 577-578 [2007] [footnotes omitted]).

New York State's "qualifying statute" is codified in article 13-G of the Public Health Law. Pursuant to the statute, NPMs selling cigarettes in New York must make annual escrow deposits. The amount of money a particular NPM must deposit annually is based on the number of "units sold" by that manufacturer. "Units sold," in turn, is determined by the amount of excise tax collected by the State on packs of the manufacturer's products. The State, however, has maintained a policy, both before and after the State entered into the MSA, that cigarettes sold on tribal lands within the State are exempt from taxation. Because of both the manner in which "units sold" is calculated and the State's policy regarding cigarettes sold on tribal lands, NPMs who sell cigarettes on tribal lands are not required to make annual escrow deposits.

PMs complained to the State that it "does not diligently enforce" the qualifying statute as required by the MSA because of the State's policy regarding cigarettes sold on tribal lands. The PMs believe that the State is required under the MSA to collect escrow deposits on sales of cigarettes on tribal lands, and that the State's failure to do so has triggered the NPM adjustment. If the PMs are correct and the State is required to collect escrow deposits on cigarettes sold on tribal lands, then the State, consistent with the phrase "units sold" in the qualifying statute, would have to impose excise taxes on those cigarettes. Certain Native American tribes and NPMs object to the taxation of cigarettes sold on tribal lands.

The State commenced this action seeking a declaration that "units sold" excludes cigarette sales on which excise taxes have not been collected as a matter of public policy. Certain PMs moved to compel arbitration of the issues raised in the declaratory judgment action. The motions were based on terms of the MSA requiring that disputes over whether New York enacted and diligently enforced its "qualifying statute" be resolved by arbitration. The State opposed the motions, as did NPMs Carolina Tobacco Co., Dosal Tobacco Corp. and Smokin Joes. NPM Seneca-Cayuga Tribal Tobacco Corporation moved for leave to intervene as a party plaintiff and opposed the motion and cross

motion to compel arbitration. Supreme Court granted the motion and cross motion to compel arbitration, stayed the action, and, in effect, denied Seneca-Cayuga's motion to intervene pending the outcome of the arbitration proceeding. The only entities that have appealed from the order and filed appellants' briefs are NPMs Carolina Tobacco Co., Dosal Tobacco Corp., Smokin Joes and Seneca-Cayuga (appellant NPMs).

We agree with respondent PMs that appellant NPMs are not "aggrieved" by the order and we therefore dismiss this appeal. Only an "aggrieved" party may appeal from an order (CPLR 5511). A party is "aggrieved" by an order where the party "has a direct interest in the controversy which is affected by the result and . . . the adjudication has a binding force against the rights, person or property of the party . . . seeking to appeal" (*Matter of Richmond County Socy. for Prevention of Cruelty to Children*, 11 AD2d 236, 239 [1960], *affd* 9 NY2d 913 [1961]; *see Matter of DeLong*, 89 AD2d 368, 370 [1982]; *see also Schwartzberg v Kingsbridge Hgts. Care Ctr., Inc.*, 28 AD3d 465 [2006]). That "the adjudication 'may remotely or contingently affect interests which the party represents does not give it a right to appeal' " (*DeLong*, 89 AD2d at 370, quoting *Ross v Wigg*, 100 NY 243, 246 [1885] [brackets omitted]). Thus, that a party "may be disappointed or even have been deprived of a financial benefit by the adjudication does not, without more, make [the] party 'aggrieved'. It must be shown that the party had some legal right or interest in the subject of the determination which was adversely affected thereby" (*id.*).

Appellant NPMs are not parties to the MSA and therefore not parties to the arbitration. They are NPMs, and, as all parties on this appeal acknowledge, NPMs cannot be bound by the determinations, if any, of the arbitration panel. Thus, these entities have no direct interest in the arbitration proceeding compelled by Supreme Court's order and the outcome of that proceeding will not have binding force against them. Appellant NPMs argue that the arbitration panel "*could* . . . effectively overrule the State's interpretation of its own laws and its longstanding public policy against collecting state taxes related to cigarette sales on tribal lands" (emphasis added), which *could* lead the State to seek escrow payments from the NPMs for cigarette sales on tribal lands, and that these potential events "*could* immensely affect" (emphasis added) the NPMs' interests. This argument simply highlights that the arbitration proceeding " 'may remotely or contingently affect' " (*DeLong*, 89 AD2d at 370, quoting *Ross*, 100 NY at 246) the NPMs' interests, but neither those remote or contingent effects nor any disappoint-

ment that the NPMs may experience as a result of the outcome of that proceeding are sufficient to confer on the NPMs the right to appeal from the order compelling arbitration between the State and the PMs. Concur—Andrias, J.P., Friedman, McGuire and Moskowitz, JJ.