FOURTH DEPARTMENT, JANUARY, 2010

(January 12, 2010)

■ In the Matter of ROBERT T. STEWART, a Candidate for the Public Office of Chautauqua County Legislator, Seventh Legislative District, Appellant-Respondent, v CHAUTAUQUA COUNTY BOARD OF ELECTIONS, Respondent, BRIAN ABRAM, Commissioner, Chautauqua County Board of Elections, Appellant-Respondent, and NORMAN P. GREEN, Commissioner, Chautauqua County Board of Elections et al., Respondents-Appellants. (Proceeding No. 1.) In the Matter of LEON H. BEIGHTOL, a Candidate for the Public Office of Chautauqua County Legislator, Seventh Legislative District, Respondent-Appellant, v CHAUTAUQUA COUNTY BOARD OF ELECTIONS, Respondent, BRIAN ABRAM, Commissioner, Chautauqua County Board of Elections, Appellant-Respondent, NORMAN P. GREEN, Commissioner, Chautauqua County Board of Elections, Respondent-Appellant, and ROBERT T. STEWART, Appellant-Respondent. (Proceeding No. 2.) In the Matter of LEON H. BEIGHTOL, a Candidate for the Public Office of Chautauqua County Legislator, Seventh Legislative District, Respondent-Appellant, v CHAUTAUQUA COUNTY BOARD OF ELECTIONS, Respondent, BRIAN ABRAM, Commissioner, Chautauqua County Board of Elections, Appellant-Respondent, NORMAN P. GREEN, Commissioner, Chautauqua County Board of Elections, Respondent-Appellant, and ROBERT T. STEWART, Appellant-Respondent. (Proceeding No. 3.) [894 NYS2d 249]—

It is hereby ordered that the cross appeal taken by respondent-petitioner Leon H. Beightol from the order insofar as it directed the opening of the two absentee ballots is dismissed and the order is modified on the law by vacating the first ordering paragraph and invalidating the J.K. affidavit ballot and by vacating the fourth ordering paragraph and validating the two unread optical scan ballots from the Town of Poland and as modified the order is affirmed without costs, and respondent Chautauqua County Board of Elections is directed not to count the J.K. affidavit ballot and is further directed to count the two unread optical scan ballots from the Town of Poland.

Memorandum: These three proceedings were commenced pursuant to Election Law article 16 following the general election for the position of Chautauqua County Legislator for the Seventh District. Robert T. Stewart, the petitioner in proceeding No. 1 and a respondent in proceeding Nos. 2 and 3, is the Republican candidate, while Leon H. Beightol, the petitioner in proceeding Nos. 2 and 3 and a respondent in proceeding No. 1, is the Democratic candidate. Stewart and Brian Abram, the Republican Commissioner of the Chautauqua County Board of Elections who is a respondent in proceeding No. 1, contend on their appeals that Supreme Court erred in validating the "J.K. affidavit ballot" (exhibit 36) and directing that it be counted; invalidating the two ballots (exhibits 37 and 38) that could not be read by the optical scan voting machine and directing that they not be counted; and validating the affidavit ballot of John Doe and directing that it be counted. Beightol and Norman P. Green, the Democratic Commissioner of the Chautauqua County Board of Elections who is a respondent in proceeding Nos. 2 and 3, contend on their cross appeals that the court erred in directing that the two absentee ballots at issue be validated and

counted. We note at the outset that the court did not specify the result of the election, and instead ordered "that the Chautauqua County Board of Elections [Board] is hereby directed to make a tally of votes consistent with this Order."

We agree with Stewart and Abram that the court erred in validating the J.K. affidavit ballot and directing that it be counted, and we therefore modify the order accordingly. The record establishes that the voter in question was not qualified to vote in Chautauqua County pursuant to Election Law § 5-102 because she did not reside in that county at the time of the general election. Election Law § 1-104 (22) defines the term residence as the "place where a person maintains a fixed, permanent and principal home and to which he [or she], wherever temporarily located, always intends to return" (see People v O'Hara, 96 NY2d 378, 384 [2001]). The Election Law, however, "does not preclude a person from having two residences and choosing one for election purposes provided [that] he or she has 'legitimate, significant and continuing attachments' to that residence" (Matter of Isabella v Hotaling, 207 AD2d 648, 650 [1994], lv denied 84 NY2d 801 [1994], quoting Matter of Ferguson v McNab, 60 NY2d 598, 600 [1983]). The crucial factor in determining "whether a particular residence complies with the requirements of the Election Law is that the individual must manifest an intent, coupled with physical presence 'without any aura of sham' " (O'Hara, 96 NY2d at 385).

As an initial matter, we respectfully disagree with the dissent that there was conflicting testimony presented at the hearing in this matter concerning J.K. and thus that the court's determination should be given deference on that basis. Indeed, we agree with the court's factual findings but conclude that the court's legal determination is erroneous. Here, the record establishes that J.K. did not have dual residences in Chautauqua and Cattaraugus Counties. Rather, the record establishes that she had permanently moved to an apartment in Cattaraugus County in the months preceding the general election. J.K. testified at the hearing that she had stayed at a house owned by her aunt located in Chautauqua County for the past three summers and that she hoped to return to that house the following summer. She further testified, however, that it was unclear whether she would be permitted to return to the house owned by her aunt. In addition, she testified that she planned to reside permanently in the apartment that she rented in Cattaraugus County so that her son could reside closer to his father.

We respectfully further disagree with the dissent that J.K. kept most of her belongings at the house owned by her aunt. Al-

though J.K. testified that she placed certain items used during the summer inside the house, she further testified that she wanted to move her "stuff" out of the house because she did not know her aunt's intentions concerning the house. Furthermore, we note that the record establishes that the pay stubs from her employer listed the address of her apartment in Cattaraugus County and that various bills that she received in October 2009 also listed that address. "Although [J.K.] expressed at the hearing that [she] . . . intended to return to [Chautauqua County], intention without residence is of no avail" (*Matter of Willis v Suffolk County Bd. of Elections*, 54 AD3d 436, 438 [2008], *lv denied* 11 NY3d 701 [2008]). Indeed, "in deciding a controversy over a voter's residence, the crucial question is not the place where he [or she] intends to vote but where he [or she] intends to live as a permanent abode . . . [, i.e.,] 'a residence [that] the voter voluntarily chooses and has a right to take as such' " (*Matter of Seld [Seigfred]*, 268 App Div 235, 237 [1944], quoting *People v Cady*, 143 NY 100, 106 [1894]; *see generally Matter of Sauer v Springbrook Fire Dist. of Town of Elma*, 284 AD2d 1016 [2001]).

In addition, we agree with Stewart and Abram that the court erred in invalidating the two ballots that could not be read by the optical scan voting machine and directing that they not be counted, and we therefore further modify the order accordingly. The court invalidated the two ballots in question on the ground that the voters of those ballots had abandoned their ballots when they left the voting site and the voting machine was unable to read their ballots. That was error. Pursuant to 9 NYCRR 6210.13 (A) (11), which concerns abandoned ballots, in the event that a voter "leaves the voting machine or system without casting [his or her] ballot, a bipartisan team of election inspectors shall cause the ballot to be cast as the voter left it, without examining the ballot . . . If a voter leaves [his or her] paper ballot in a privacy booth and leaves the polling place without first casting that ballot on the voting device, such ballot shall be marked 'spoiled' and retained by the election inspectors, accounted for in the Statement of Canvass, and returned in secure storage with such other spoiled ballots to the county board."

Here, the record establishes that both voters took the ballots to the voting machine and attempted to scan their votes. There is no evidence that those voters left their ballots in the privacy booth or indicated to the election workers that they did not want their votes to be cast. In fact, a polling coordinator testified at the hearing in this matter that she spoke to one of the two voters in question, whose ballot was received in evidence as

exhibit 37, and that voter informed her that he wanted his vote to be cast. Contrary to the court's determination, nothing in either the Election Law or the regulations suggests that a voter abandons his or her vote if the voter refuses to fill out a new ballot in the event that the voter's ballot cannot be read by the optical scan voting machine or the voter departs before his or her vote has been processed. Indeed, as noted, 9 NYCRR 6210.13 (A) (11) provides that, in the event that "a voter leaves the voting machine or system without casting [his or her] ballot, a bipartisan team of election inspectors shall cause the ballot to be cast as the voter left it, without examining the ballot." Importantly, 9 NYCRR 6210.13 (A) (8) provides that, if a ballot is "non-machine processable as submitted by the voter, [it] shall be manually counted by a bipartisan team of election inspectors and such vote totals shall be added to the canvass of such other valid ballots for the respective office(s) and ballot questions." We thus conclude that the two ballots in question are valid and must be counted.

We further conclude, however, that the court properly determined that it lacked jurisdiction to consider the objections of Stewart and Abram to the affidavit ballot of John Doe and thus that his affidavit ballot was valid and properly counted. Pursuant to Election Law § 16-106, Supreme Court has jurisdiction over "challenged" affidavit ballots (*see* § 16-106 [1]; *see generally Matter of Stern v Garfinkle*, 22 AD3d 695 [2005]; *Matter of Gates v Scaringe*, 105 AD2d 543 [1984], *lv denied* 63 NY2d 609 [1984]) and, "[i]f no objection is lodged to the [board of election's] decision to canvass or refuse to canvass a particular ballot during the canvass, that ballot cannot later be the subject of a judicial challenge" (*Matter of Gross v Albany County Bd. of Elections*, 3 NY3d 251, 257 [2004]; *see Sheils v Flynn*, 275 NY 446, 452 [1937]; *Stern*, 22 AD3d at 695). Here, Stewart and Abram failed to demonstrate that there was a challenge to the affidavit ballot of John Doe (*see Matter of Dorman v Scaringe*, 222 AD2d 887, 888 [1995]).

Beightol contends on his cross appeal that the court erred in ordering that the two absentee ballots at issue be opened. It is undisputed that the Board received absentee ballot applications from those two voters that failed to state the dates and reasons for their absences on election day pursuant to Election Law § 8-400 (3) (c). The Board then sent the absentee ballots to those voters with their incomplete absentee ballot applications and instructed the absentee voters to return the completed applications together with their ballots. Stewart objected to opening the ballots on the ground that the Board sent the voters those

ballots before it found "the application[s] acceptable" (*Gross*, 3 NY3d at 256; *see* Election Law § 8-402 [1], [2]). In his answer to the petition in proceeding No. 1, Beightol contended that the absentee ballots are valid and should be counted. After the court directed that those ballots be opened and the votes were revealed, Beightol supplemented his answer with an affidavit from his attorney stating, inter alia, that the Board erred in sending the voters the absentee ballots before their applications were determined to be acceptable and that the ballots were therefore invalid. Beightol's cross appeal from that part of the order "that ordered the opening of the absentee ballots" must be dismissed on the ground that Beightol is not aggrieved by that part of the order. Inasmuch as the court directed that the ballots be opened, Beightol "obtained precisely the relief that [he] sought," despite the fact that the absentee ballots were not in his favor (*Matter of Niagara Frontier Transp. Auth. [International Longshoremen's Assn., Local 2028]*, 67 AD3d 1424, 1425 [2009]; *see* CPLR 5511; *see generally Town of Massena v Niagara Mohawk Power Corp.*, 45 NY2d 482, 488 [1978]), and we therefore dismiss Beightol's cross appeal from the order insofar as it directed the opening of those ballots. We further note that, in any event, Beightol is judicially estopped from assuming a position before this Court and Supreme Court that was contrary to his position in the proceeding commenced by Stewart to contest the opening of the absentee ballots at issue (*see Maas v Cornell Univ.*, 253 AD2d 1, 5 [1999], *affd* 94 NY2d 87, 93 [1999]).

Beightol also commenced proceeding No. 2, which raised an objection to the two absentee ballots on the ground that they contained extrinsic materials, i.e., the ballot applications, in violation of Election Law § 9-112 (1). With respect to the contention of Beightol on his cross appeal that the court erred in directing that the absentee ballots at issue be counted, we conclude that the contention lacks merit. The court properly determined that the absentee ballots were not invalidated by the presence of the completed applications, which were folded separately and were not within the absentee ballots contained in the respective envelopes. In his dissent in *Matter of Altimari v Meisser* (22 AD2d 933, 934 [1964], *mod* 15 NY2d 686 [1965], *mot to amend remittitur granted* 15 NY2d 847, 855 [1965], *rearg denied* 15 NY2d 854 [1965]), Justice Ughetta wrote that the rule concerning the inclusion of extrinsic material "is aimed at preventing insertion of a message within the folded ballot." The Court of Appeals modified the order of the Appellate Division and, inter alia, agreed with Justice Ughetta that the ballot in question was valid inasmuch as the note written by the voter was not contained within the ballot itself. Here, the envelope

identified the voter whose absentee ballot was contained therein (*see Gross*, 3 NY3d at 256-257), and no marks on the absentee ballots themselves could have identified the voter who cast the respective ballots (*cf. Matter of Alessio v Carey*, 49 AD3d 1147, 1148-1149 [2008], *lv denied* 10 NY3d 803 [2008]).

Finally, we do not address the remaining contention of Beightol on his cross appeal inasmuch as his notice of cross appeal expressly limited the scope thereof, and it did not include that part of the order concerning that contention (*cf. McSparron v McSparron*, 87 NY2d 275, 282 [1995], *rearg dismissed* 88 NY2d 916 [1996]; *see generally* CPLR 5515 [1]).

All concur except Peradotto and Green, JJ., who dissent in part in accordance with the following memorandum.

Peradotto and Green, JJ. (dissenting in part). We respectfully dissent in part. Robert T. Stewart, the petitioner in proceeding No. 1 and a respondent in proceeding Nos. 2 and 3, is the Republican candidate for the position of Chautauqua County Legislator for the Seventh District, and Leon H. Beightol, the petitioner in proceeding Nos. 2 and 3 and a respondent in proceeding No. 1, is the Democratic candidate. The proceedings before us were commenced to challenge the validity of certain ballots, including two absentee ballots. Under the circumstances presented here, we cannot agree with the majority that Beightol, a cross appellant, was not aggrieved by "that part of the order 'that ordered the opening of the absentee ballots.' " Contrary to the suggestion of the majority, no part of the order on appeal directed the parties to open the two absentee ballots. The order, in relevant part, only directed that the absentee ballots be counted, and Beightol is clearly aggrieved by such order.

Pursuant to CPLR 5511, "[a]n aggrieved party . . . may appeal from any appealable judgment or order except one entered upon the default of the aggrieved party." A party is aggrieved when he or she " 'has a direct interest in the controversy which is affected by the result' and [when] 'the adjudication has a binding force against the rights, person or property of the party' " (*Matter of DeLong*, 89 AD2d 368, 370 [1982], *lv denied* 58 NY2d 606 [1983]; *see State of New York v Philip Morris Inc.*, 61 AD3d 575, 578 [2009], *lv granted* 17 NY3d 714 [2009]). "A successful party who has obtained the full relief sought is not aggrieved, and therefore has no grounds for appeal" (*T.D. v New York State Off. of Mental Health*, 91 NY2d 860, 862 [1997]; *see* CPLR 5511). "The major exception to [that] general rule, however, is that the successful party may appeal or cross-appeal from a judgment or [an] order in his [or her] favor if [the party] is nevertheless prejudiced because it does not

grant him [or her] complete relief" (*Parochial Bus Sys. v Board of Educ. of City of N.Y.,* 60 NY2d 539, 544-545 [1983]).

Here, Stewart sought a determination in proceeding No. 1 that the two absentee ballots "should be rejected and not opened, canvassed or counted" because respondent Chautauqua County Board of Elections (Board) rejected the absentee ballot applications submitted by the respective voters as incomplete and the Board did not receive completed applications prior to mailing absentee ballots to those voters. Brian Abram, the Republican Commissioner of the Board who is a respondent in proceeding No. 1, likewise sought rejection of the absentee ballots for failure, inter alia, to submit valid applications. In response, Beightol contended that the absentee ballots were valid and should be counted because the Board provided the absentee ballots to the voters and thus the ballots were presumptively valid. Norman P. Green, the Democratic Commissioner of the Board who is also a respondent in proceeding No. 1, likewise contended that the absentee ballots should be deemed valid and thus should be counted. On November 30, 2009, the parties appeared before Supreme Court and, although the record does not contain either an oral or written decision from the court resulting from that court appearance, it is undisputed that the court ordered that the two absentee ballots be opened and inspected. Importantly, the record is devoid of any evidence establishing that the court at that time rendered any legal determination with respect to the validity of the absentee ballots or the ballot applications. The court's determination that the ballots be opened, standing alone, is of little or no legal consequence. Thus, contrary to the majority's position, none of the parties received the complete relief sought because the court did not determine at that time whether the absentee ballots or ballot applications were valid and should be counted (*see generally Parochial Bus Sys.,* 60 NY2d at 544-545).

When the envelopes containing the absentee ballots were opened, the parties discovered that the voters had enclosed their completed absentee ballot applications along with their ballots. At that point, Stewart objected to the ballots based upon the inclusion of the absentee ballot applications in the envelopes containing the ballots. After the ballots were opened and the votes were revealed, both Beightol and Stewart switched their positions with respect to the absentee ballots. Beightol sought to invalidate the absentee ballots on the ground that the Board failed to follow the procedures set forth in the Election Law when it sent the absentee ballots to the voters along with their incomplete applications. In proceeding No. 2, Beightol and

Green sought a determination that the absentee ballots were invalid because the envelopes contained extrinsic materials in violation of Election Law § 9-112 (1). In contrast, Stewart withdrew his objection to the validity of the absentee ballots and contended that the votes should be counted. Stewart and Abram also abandoned their contention that the absentee ballots were invalidated by the Board's failure to follow the procedures set forth in the Election Law and, instead, contended that the absentee ballots were valid because the absentee ballot applications were not folded into the ballots and thus did not violate Election Law § 9-112.

The court did not make any determination concerning the validity of the absentee ballots until December 9, 2009, when it issued an oral decision concerning all three proceedings. In that decision, the court determined, inter alia, that the absentee ballots were valid and that the votes should be counted on two grounds. First, the court concluded that, once the Board mailed the absentee ballots to the voters in question, the absentee ballot applications were deemed complete, and thus the votes were valid. Second, the court concluded that, because the absentee voters had complied with the Board's instructions to return the completed absentee ballot applications along with their ballots and each absentee ballot, on its face, was not impacted by the extrinsic materials, the absentee ballots were not invalidated by the inclusion of those applications. On December 21, 2009, the court entered an order reflecting its oral decision, and that is the only order before us on this appeal. Beightol is clearly aggrieved by that order, the only appealable paper in the record, inasmuch as the court denied his request to invalidate the absentee ballots and direct that they not be counted.

With respect to the majority's conclusion that "Beightol is judicially estopped from assuming a position before this Court and Supreme Court that was contrary to his position in the proceeding commenced by Stewart to contest the opening of the absentee ballots at issue," we note that Stewart likewise reversed his position with respect to the validity of the absentee ballots after they were opened and the votes were revealed. It is well settled that the doctrine of judicial estoppel is grounded in considerations of equity (*see generally Zedner v United States*, 547 US 489, 504 [2006]; *Clifton Country Rd. Assoc. v Vinciguerra*, 252 AD2d 792, 793 [1998]; *Environmental Concern v Larchwood Constr. Corp.*, 101 AD2d 591, 593-594 [1984]). As the United States Supreme Court recently explained, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he [or she] may not there-

after, simply because his [or her] interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him [or her]" (*Zedner*, 547 US at 504 [internal quotation marks omitted]). In his answer to Stewart's petition in proceeding No. 1, Beightol contended that the absentee ballots "are valid and should be counted." In response thereto, the court did *not* order that the ballots should be "counted." Rather, the court ordered only that the ballots should be opened. Further, it is unclear from the record whether the court accepted Beightol's reasoning when it ordered that the ballots be opened. Thus, Beightol did not " 'succeed[ ] in persuading [the] court to accept [his] earlier position' " (*Zedner*, 547 US at 504).

In any event, even assuming, arguendo, that the doctrine of judicial estoppel applies to the facts of this case, we conclude that it should not be applied to foreclose Beightol from advancing his position on this appeal inasmuch as both parties have assumed positions that are directly contrary to the positions they took at the outset of this case. Because both parties changed their respective positions concerning the absentee ballots at issue once the votes were revealed, it cannot be said that the conduct of one party, as opposed to the other, warrants the invocation of the doctrine of judicial estoppel. In addition, neither party was prejudiced or otherwise adversely affected by the inconsistent position of the other inasmuch as both parties changed their positions before the court based upon self-interest. We thus conclude that the doctrine of judicial estoppel is not applicable under the facts of this case.

We therefore conclude that dismissal of part of the cross appeal taken by Beightol is unwarranted and that the validity of the absentee ballots should be determined on the merits. We agree with Beightol that the Board failed to comply with the procedural requirements of the Election Law with respect to the issuance of absentee ballots. Under the Election Law, the local board of elections has a "duty to assess the validity of applications before forwarding absentee ballots" (*Matter of Gross v Albany County Bd. of Elections*, 3 NY3d 251, 260 [2004]; *see* Election Law § 8-402 [1], [2]), and the local board of elections may forward an absentee ballot if it "finds the application acceptable" (*Gross*, 3 NY3d at 256). Here, the Board received absentee ballot applications from the two voters at issue that failed to state the dates and reasons for their absences on election day as required by Election Law § 8-400 (3) (c). In response, the Board mailed the absentee ballots to the voters together with their incomplete absentee ballot applications and instructed

the voters to return the completed applications along with their ballots. Because the absentee voters never articulated why they were unable to vote at the polls on election day and did not provide the dates of their absences, the Board "had no basis to conclude that [those] voters were qualified to cast absentee votes" prior to sending the absentee ballots (*Gross*, 3 NY3d at 259). The Board's error "cannot be characterized as technical, ministerial or inconsequential because it was central to the substantive process by which voters are determined to be qualified to cast absentee ballots" (*id.* at 258-259). We therefore conclude that the court erred in directing that the absentee ballots at issue be validated and counted.

Thus, we would not dismiss any part of the cross appeal taken by Beightol from the order and would further modify the order by vacating the third ordering paragraph and invalidating the two absentee ballots, and we would further direct the Board on remittal not to count those ballots.

Green, J., further dissents in part in accordance with the following memorandum.

Green, J. (dissenting in part). I respectfully dissent in part. Contrary to the majority, I conclude that Supreme Court property validated the "J.K. affidavit ballot" and directed that it be counted. The decision of respondent Chautauqua County Board of Elections that J.K. was qualified to vote in the election is "statutorily deemed presumptive evidence of [her] residence for voting purposes" (*Matter of Hosley v Curry*, 85 NY2d 447, 452 [1995], *rearg denied* 85 NY2d 1033 [1995]; *see* Election Law § 5-104 [2]), and Robert T. Stewart and Brian Abram, respondents in proceeding Nos. 2 and 3, have "not sustained [their] burden of overcoming said presumption" (*Matter of Bressler v Holt-Harris*, 37 AD2d 898, 898 [1971], *affd* 30 NY2d 529 [1972]). In addition, "[t]he question of residence is a factual one, based on a variety of factors and circumstances . . . Where there is conflicting testimony, the resolution of the conflict lies within the province of the [hearing] court, as the finder of fact, and should not be disturbed on appeal unless 'it is obvious that the court's conclusion could not be reached under any fair interpretation of the evidence' " (*Matter of Fernandez v Monegro*, 10 AD3d 429, 430 [2004]).

Here, a fair interpretation of the evidence supports the court's determination that J.K. resided in Chautauqua County for purposes of the Election Law. As noted by the majority, the term residence is defined in Election Law § 1-104 (22) as the "place where a person maintains a fixed, permanent and principal home and to which he [or she], wherever temporarily

located, always intends to return" (*see People v O'Hara*, 96 NY2d 378, 384 [2001]). As further noted by the majority, however, the Election Law "does not preclude a person from having two residences and choosing one for election purposes provided he or she has 'legitimate, significant and continuing attachments' to that residence" (*Matter of Isabella v Hotaling*, 207 AD2d 648, 650 [1994], *lv denied* 84 NY2d 801 [1994], quoting *Matter of Ferguson v McNab*, 60 NY2d 598, 600 [1983]). Indeed, as the Court of Appeals explained in *O'Hara*, "[t]he crucial [factor in determining] whether a particular residence complies with the requirements of the Election Law is that the individual must manifest an intent, coupled with physical presence 'without any aura of sham' " (96 NY2d at 385). "[T]he inquiry is not which of [the voter's] dual residences is 'the more appropriate one' for voting purposes, but whether the residence held by [the voter] is a legitimate one" (*Matter of Willkie v Delaware County Bd. of Elections*, 55 AD3d 1088, 1091 [2008], quoting *O'Hara*, 96 NY2d at 385).

The evidence presented at the hearing in this matter demonstrated that J.K. has significant and genuine contacts with Chautauqua County such that her choice of that county as her residence for voting purposes was properly honored by the court (*see Matter of Gallagher v Dinkins*, 41 AD2d 946, 946-947 [1973], *affd* 32 NY2d 839 [1973]; *Willkie*, 55 AD3d at 1090; *Matter of Stavisky v Koo*, 54 AD3d 432, 434 [2008]). For the three years preceding the election at issue, J.K. has resided during the summer months at her aunt's house located in Chautauqua County and has moved during the winter months to Cattaraugus County, where she rented various apartments. Although in August 2009 J.K. rented an apartment on a month-to-month basis in Cattaraugus County, she testified at the hearing that she kept most of her personal belongings at the Chautauqua County residence and hoped to return there the next summer. Until July 2009, J.K. received mail listing the address of the Chautauqua County residence. Further, J.K. testified that she grew up in Chautauqua County, registered to vote there in 2001 and had always voted there. In addition, on the relevant election day in November 2009, J.K. filled out an affidavit ballot on which she certified that she was duly registered to vote in Chautauqua County and listed her address as her Chautauqua County residence. That address "represents a place of residence based on express intent, coupled by physical manifestation, without any aura of sham" (*Gallagher*, 41 AD2d at 947). Thus, I would affirm that part of the order validating

J.K.'s affidavit ballot and directing that it be counted. Present—Scudder, P.J., Smith, Peradotto, Green and Pine, JJ.