Starr Russia Invs. III B.V. v Deloitte Touche Tohmatsu Ltd. (2021 NY Slip Op 01525)





Starr Russia Invs. III B.V. v Deloitte Touche Tohmatsu Ltd.


2021 NY Slip Op 01525


Decided on March 16, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 16, 2021

Before: Manzanet-Daniels, J.P., Mazzarelli, Mendez, Shulman, JJ. 


Index No. 652251/17 Appeal No. 13369N Case No. 2020-03556 

[*1]Starr Russia Investments III B.V., Plaintiff-Respondent,
v
Deloitte Touche Tohmatsu Limited, et al., Defendants-Appellants, ZAO Deloitte & Touche CIS, Defendant.


Hughes Hubbard & Reed LLP, New York (William R. Maguire of counsel), for Deloitte Touche Tohmatsu Limited, appellant.
Kramer Levin Naftalis & Frankel LLP, New York (Michael J. Dell of counsel), for Deloitte LLP, Deloitte CIS Limited and Deloitte CIS Holdings Limited, appellants.
Cadwalader Wickersham & Taft LLP, New York (Nicholas A. Gravante, Jr. of counsel), for respondent.



Order, Supreme Court, New York County (Andrew Borrok, J.), entered August 6, 2020, which granted plaintiff Starr Russia Investments III B.V.'s (Starr) motion to compel defendant Deloitte Touche Tohmatsu Limited (DTTL) to produce discovery, unanimously modified, on the law and the facts, to deny the motion insofar as it seeks to compel production of documents concerning the distribution of fees collected from clients other than Investment Trade Bank (ITB) (Discovery Request No. 31), and otherwise affirmed, without costs.
Defendants Deloitte LLP, Deloitte CIS Limited, and Deloitte CIS Holdings Limited (collectively, the UK Deloitte defendants) have standing to appeal. Although the order compelled only defendant DTTL to respond to the discovery requests, the UK Deloitte defendants were nonetheless "aggrieved" under CPLR 5511, as the order compels discovery that could establish jurisdiction over them in this matter (see State of New York v Philip Morris Inc., 61 AD3d 575, 578 [1st Dept 2009] ["A party is 'aggrieved' by an order where the party has a direct interest in the controversy which is affected by the result and the adjudication has a binding force against the rights, person or property of the party seeking to appeal'"] [internal quotation marks and ellipses omitted]).
A party seeking discovery must demonstrate that "the request is reasonably calculated to yield information that is 'material and necessary' — i.e., relevant" (Forman v Henkin, 30 NY3d 656, 661 [2018]; see also CPLR 3101[a]).
Initially, our decision in Starr Russia Invs. III B.V. v Deloitte Touche Tohumatsu Ltd. (169 AD3d 421 [1st Dept 2019]) limits the direct claims against DTTL to only claims concerning its fraudulent inducement of plaintiff's investment in ITB in 2008. Thus, discovery concerning the audits of ITB's 2013 and 2014 financial statements are not relevant to these direct claims.
The "policies manuals" in place from 2007 through 2015 are relevant to the direct claims against defendant ZAO Deloitte & Touche CIS (ZAO), as they could illuminate whether, and to what extent, ZAO followed the policies throughout its dealings with plaintiff during those years. Any policy manual that was in place in 2008 is relevant to the direct claims against DTTL, as they relate to the extent of DTTL's contribution to the production of documents that induced Starr to invest in ITB. Plaintiff does not dispute that the manuals are irrelevant to alter ego jurisdiction discovery as to the UK Deloitte Defendants.
DTTL's "practice reviews" of ZAO's work for clients other than ITB are relevant to the direct claims against ZAO, as they could show how ZAO operated generally, and whether ZAO consistently or even occasionally skirted the lines of proper conduct, which could be probative of intent (see High Value Trading, LLC v Shaoul, 168 AD3d 641, 641-642 [1st Dept 2019] ["evidence of other similar acts can be introduced to establish intent in fraud cases"]). Such practice reviews are relevant [*2]to the direct claims against DTTL, as they could show whether DTTL was aware of improprieties committed by ZAO but failed to take any action, and whether such failure contributed to its production of fraudulent documents to induce Starr to enter into the ITB transaction.
Documents related to ZAO's insolvency in 2010 are irrelevant to the direct claims against DTTL for fraudulent inducement in 2008. However, such discovery is relevant to the direct claims against ZAO, as it could relate to ZAO's motivation to induce plaintiff to maintain its investment in 2010. ZAO's insolvency is also relevant to alter ego jurisdiction discovery as to the UK Deloitte Defendants; it goes directly to any motivation by UK Deloitte to take control of ZAO, and when such control was exerted.
Documents concerning who pays the compensation of ZAO's partners and employees after November 26, 2010 are irrelevant to the direct claims against DTTL or ZAO. Such documents, however, are relevant to alter ego jurisdiction over the UK Deloitte defendants, as they could yield information as to whether, and to what degree, they dominated and controlled ZAO.
Documents concerning the distribution of fees that ZAO collected from clients other than ITB after November 26, 2010 are irrelevant to any of the claims.
The organization charts for DTTL are irrelevant to the direct claims against ZAO. The organizational structure of DTTL has little to do with ZAO's fraudulent conduct. However, they are relevant to the direct claims against DTTL, as they could show how the various Deloitte entities interact, and could relate to DTTL's knowledge of the fraud, and ability to participate in the fraud. The organization charts are also relevant to determining whether the UK Deloitte Defendants were the alter ego of ZAO.
DTTL and the UK Deloitte defendants contend that the documents concerning ZAO's insolvency, the compensation of ZAO's employees, and the organization charts exceed the scope of alter ego jurisdictional discovery as delineated by this Court's prior order, because such discovery does not specifically relate to "plaintiff's decision to maintain its investment in [ITB]" or "ZAO's audits of ITB's financial statements" (Starr Russia Invs. III B.V. v Deloitte Touche Tohmatsu Ltd., 185 AD3d 508, 509 [1st Dept 2020]). However, in determining alter ego liability, courts look at myriad factors indicative of domination and control, in conjunction with evidence of a specific transaction being attacked (see Fantazia Intl. Corp. v CPL Furs N.Y., Inc., 67 AD3d 511, 512 [1st Dept 2009]), and not all evidence must be tethered to the transaction being challenged. Further, while these documents relate to the UK Deloitte defendants' domination and control of ZAO "generally," they necessarily encompass their domination and control over the work that ZAO did for ITB, including the work that induced "plaintiff's decision to maintain its investment in ITB" and "ZAO's audits of ITB's financial statements[*3]," and therefore, are relevant to the transactions being challenged. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 16, 2021