Matter of Daniel J. Lynch, Inc. v Board of Educ. of the Me.-Endwell Cent. Sch. Dist.

2026 NY Slip Op 03209

May 21, 2026

Appellate Division, Third Department

Ceresia, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Daniel J. Lynch, Inc., et al., Respondents,

v

Board of Education of the Maine-Endwell Central School District et al., Appellants.

Decided and Entered:May 21, 2026

CV-25-0422

Calendar Date: March 23, 2026

Before: Clark, J.P., Ceresia, Fisher, Powers And Corcoran, JJ.

Alario & Fischer, PC, Manlius (Harris Lindenfeld of counsel), for Board of Education of the Maine-Endwell Central School District and another, appellants.

Barclay Damon, LLP, Buffalo (James P. Domagalski of counsel), for Smith Site Development, LLC, appellant.

Hinman, Howard & Kattell, LLP, Binghamton (Paul T. Sheppard of counsel), for respondents.

Couch White, LLP, Albany (Joel M. Howard III of counsel), for Associated General Contractors of New York, LLC, amicus curiae.

Archer, Byington, Glennon & Levine, LLP, Melville (James W. Versocki of counsel), for The New York State Laborers-Employers Cooperation and Education Trust, amicus curiae.

Sheats & Bailey, PLLC, Liverpool (Edward J. Sheats of counsel), for Building Industry Employers of New York State, amicus curiae.

McCarter & English, LLP, New York City (Brian W. Carroll of counsel), for FieldTurf USA Inc., amicus curiae.

Fox Rothschild LLP, New York City (Sarah B. Biser of counsel), for Weatherproofing Technologies, Inc. and another, amici curiae.

New York State School Boards Association, Inc., Latham (Pilar Sokol of counsel), for New York State School Boards Association, Inc. and others, amici curiae.

[*1]

Ceresia, J.

Appeal from a judgment of the Supreme Court (Oliver Blaise III, J.), entered February 13, 2025 in Broome County, which partially granted petitioners' application, in a proceeding pursuant to CPLR article 78, to, among other things, annul a contract for violation of competitive bidding requirements under the General Municipal Law.

In December 2022, voters approved a bond referendum to support a multiyear, multiphase capital project involving various buildings and facilities of respondent Maine-Endwell Central School District, which is governed by respondent Board of Education of the Maine-Endwell Central School District (hereinafter collectively referred to as the district). Phase one of the project replacement of a sewer line and parking lot at the district's high school was completed in the summer of 2023 by respondent Smith Site Development, LLC. The district was pleased with Smith's work and began exploring the possibility of using Smith for phase two, which was to involve heating, ventilation and air conditioning (hereinafter HVAC) renovations and classroom construction at an elementary school. In October 2023, the district submitted its plans for phase two to the State Education Department for its review and approval (see Education Law § 408; 8 NYCRR 155.2). When such approval was delayed, the district decided that, rather than undergoing a competitive public bidding process that could not begin until after the plans were approved, it would hire Smith directly to perform the HVAC portion of phase two by means of cooperative purchasing through an entity called The Interlocal Purchasing System (hereinafter referred to as TIPS).

TIPS is a Texas public agency that describes itself as "a national purchasing cooperative offering competitively solicited contracts to education[,] government and nonprofit agencies." TIPS states that its members are "able to save time and money . . . because TIPS completes the competitive bidd[ing] process for [them]." In addition to allowing its public entity members to quickly select a vendor from a preapproved, competitively evaluated list, TIPS acts as a broker by providing its members opportunities to "piggyback" a contract onto a previously awarded contract, utilizing some of the same terms and conditions.

Discussions between the district and Smith continued, and Smith provided the district with an initial cost-benefit analysis, an estimate and final cost proposals. In addition to installation of HVAC equipment, Smith's proposals contemplated that the work would include demolition, asbestos abatement and interior and exterior construction. In July 2024, the district awarded the phase two HVAC contract to Smith by piggybacking it onto their phase one contract. Thereafter, petitioners local contractors who alleged that they were denied the opportunity to competitively bid on the HVAC portion of phase two commenced this CPLR article 78 proceeding seeking, among other things, to annul the contract between the [*2]district and Smith for violation of competitive bidding requirements under the General Municipal Law. After answers were filed by the district and Smith, Supreme Court granted the petition to the extent of finding that the district's use of TIPS constituted impermissible piggybacking for a public works project under General Municipal Law § 103. The court enjoined the district from using TIPS or a similar consortium or process to award further public works contracts for the project and directed it to follow the competitive bidding procedures set out in General Municipal Law § 101 and pertinent subdivisions of General Municipal Law § 103. However, given that Smith's HVAC work was already underway, the court further ordered that Smith could complete that work without penalty. The district and Smith each appeal.

Preliminarily, Smith's appeal must be dismissed for lack of aggrievement, a jurisdictional prerequisite to taking an appeal (see CPLR 5511; Matter of Town of Brookhaven v Ball, 239 AD3d 172, 175 [3d Dept 2025], lv denied 44 NY3d 904 [2025]). A party is aggrieved, as relevant here, "when a court grants relief, in whole or in part, against such party and such party had opposed the requested relief" (Matter of Dolomite Prods. Co., Inc. v Town of Ballston, 151 AD3d 1328, 1331 [3d Dept 2017]). "Aggrievement does not hinge upon a court's reasons underpinning why relief was granted or denied" (id. [citation omitted]; see Mixon v TBV, Inc., 76 AD3d 144, 149 [2d Dept 2010]). Here, the relief sought by petitioners against Smith consisted of enjoining it from performing further work on phase two of the project, ordering it to disgorge payments received to date and requiring it to pay petitioners' counsel fees and expenses. Smith opposed this relief, and none of it was granted by Supreme Court. Thus, regardless of the court's underlying rationale, Smith was not aggrieved by the judgment. While Smith argues that the court's ruling on the permissibility of piggybacking could affect its present and future business dealings, not only is this claim speculative, but the fact "[t]hat the adjudication may remotely or contingently affect interests which the party represents does not give it a right to appeal" (State of New York v Philip Morris Inc., 61 AD3d 575, 578 [1st Dept 2009] [internal quotation marks and citations omitted], appeal dismissed 15 NY3d 898 [2010]; see Hermitage Ins. Co. v 186-190 Lenox Rd., LLC, 142 AD3d 422, 424 [1st Dept 2016]).

Turning to the district's appeal, the question presented to this Court is whether piggybacking may be used to award a public works contract under the General Municipal Law. As a general rule, all contracts for public works worth over $35,000, and all purchase contracts worth over $20,000, are subject to the competitive bidding process and either must be awarded to the lowest responsible bidder or, in some cases, may be awarded on the basis of best value (see General Municipal Law § 103 [1]).FN1 Notwithstanding this rule[*3], the law also provides that when a public entity "make[s] purchases of apparatus, materials, equipment or supplies, or . . . contract[s] for services related to the installation, maintenance or repair of apparatus, materials, equipment, and supplies," it may do so by piggybacking onto a contract entered into by another public entity located anywhere in the United States, if such contract "was let to the lowest responsible bidder or on the basis of best value in a manner consistent with this section and made available for use by other governmental entities" (General Municipal Law § 103 [16]). Petitioners argue that this language allows piggybacking only in connection with purchase contracts, not public works construction contracts like the district's contract with Smith, such that the district impermissibly circumvented the competitive bidding requirements. The district, however, contends that this statutory subsection provides an alternative to the public bidding process and does not exclude public works contracts. In finding for petitioners, Supreme Court determined that competitive bidding must be utilized for all public works contracts, which it defined as "construction or repair projects undertaken by municipalities on their infrastructure," while General Municipal Law § 103 (16) provides a narrow exception to that rule to allow piggybacking only for "the 'purchase' of specific classes of things."

In matters of statutory interpretation, our primary concern "is to ascertain and give effect to the intention of the Legislature" (Matter of Strzepek v DiNapoli, 227 AD3d 1353, 1355 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Lynch v City of New York, 40 NY3d 7, 13 [2023]; Kuzmich v 50 Murray St. Acquisition LLC, 34 NY3d 84, 91 [2019], cert denied 589 US 1136 [2020]). " '[T]he statutory text is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning' " (Hauser v Fort Hudson Nursing Ctr., Inc., 202 AD3d 45, 48 [3d Dept 2021], quoting Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]). "Courts should also consider the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history" (Kokoska v Joe Tahan's Furniture Liquidation Ctrs., Inc., 243 AD3d 15, 20 [3d Dept 2025] [internal quotation marks and citations omitted]; see Matter of Central Hudson Gas & Elec. Corp. v State of N.Y. Pub. Serv. Commn., 242 AD3d 33, 37 [3d Dept 2025]).

In determining whether General Municipal Law § 103 (16) provides a limited exception to General Municipal Law § 103 (1), or, as the district argues, a broader alternative to that general rule, we begin by observing that while subsection (1) specifically references public works contracts, subsection (16) does not. Although the Legislature could have explicitly identified public works contracts as being subject to the piggybacking [*4]provision of subsection (16), it chose not to do so. Instead, by its plain language, subsection (16) permits piggybacking only in a specific set of circumstances that is, when it comes to purchasing certain specified items ("apparatus, materials, equipment or supplies") or arranging for services related to those specific items (General Municipal Law § 103 [16]). This statutory structure signifies that piggybacking applies only in certain limited circumstances, and we agree with Supreme Court that the omission of language referencing public works contracts from the piggybacking provision suggests that the Legislature did not intend to allow them to be exempt from competitive bidding (see Stefanik v Hochul, 43 NY3d 49, 69 [2024]; Matter of Matzell v Annucci, 183 AD3d 1, 6 [3d Dept 2020]).

This conclusion finds further support in the legislative history. After many decades in which competitive bidding served as the basic framework for public procurement, the Legislature passed the piggybacking provision in 2012 (see L 2012, ch 308, § 1). At that time, it was stated that the purpose of enacting General Municipal Law § 103 (16) was to "[a]uthorize[ ] municipalities and districts thereof to contract for goods and services jointly with federal and any state or other municipalit[ies]," and it was observed that 48 other states had enacted methods to allow "cooperative purchasing" (Senate Mem in Support, Bill Jacket, L 2012, ch 308 at 9 [emphasis added]). No mention was made in the bill introducer's memorandum of piggybacking being used for public works contracts. Further, when recommending that General Municipal Law § 103 (16) be signed into law, the Division of the Budget seemed to anticipate that it would be implemented in the purchasing context, acknowledging that arguments in support of the provision included "savings through volume discounts," while arguments in opposition included that governments might not obtain the lowest price because "they would not be required to purchase these items from the lowest responsible bidder" (Div of Budget Mem, Bill Jacket, L 2012, ch 308 at 12 [emphasis added]). Thus, it appears that the Legislature contemplated that the piggybacking provision would be used to facilitate procurement in the context of purchase contracts, as opposed to construction and renovation projects like the one at issue.

Given all of the foregoing, the judgment should be affirmed. The district's remaining contentions, to the extent not expressly addressed, have been considered and found unavailing.

Clark, J.P., Fisher, Powers and Corcoran, JJ., concur.

ORDERED that the appeal of respondent Smith Site Development, LLC is dismissed and the judgment is affirmed, with costs.

Footnotes

Footnote 1

The term "[b]est value" refers to a basis for awarding a contract that optimizes quality, cost and efficiency among responsible bidders (State Finance Law § 163 [1] [j] [internal quotation marks omitted]).