OPINION OF THE COURT
Linda S. Jamieson, J.
This is a special proceeding pursuant to article 78 of the CPLR and article 16 of the Election Law seeking an order (1) directing the Board of Elections to change the voters who reside at 10 Pinesbridge Road, Maryknoll, NY to the 14th Election District in the Town of New Castle from the 25th Election District, Town of Ossining; and (2) directing the Board to notify the voters immediately that their polling place has been changed. Background
Petitioner Tripodi is an Ossining resident running in the November 5, 2013 general election for the Westchester Legislature in District 9. Petitioner Dewey is the chair of the Ossining Republican Town Committee.
On October 16, 2013, less than three weeks before the election, Mr. Tripodi contacted the Board and explained that his research had revealed that the voters residing at 10 Pinesbridge Road, Maryknoll, NY 10545, “according to Westchester County GIS maps,” are located within County District 4, not District 9. The Board responded to Mr. Tripodi on October 23, 2013, stating that, although Commissioner Colety agreed with Mr. Tripodi, Commissioner LaFayette felt that the matter “will ultimately have to be decided by court litigation since the ap *285 proved legislation designated this area as part of County Legislative District 9.” This litigation was filed the same day.
Counsel for the parties appeared in court on October 28, 2013. Respondent Commissioner LaFayette filed a motion to dismiss the petition based on (1) failure to name necessary parties; (2) untimeliness; and (3) failure to state a cause of action. The court set an expedited briefing schedule, and a hearing for October 30th.
The address in question is a convent for the Maryknoll Sisters of St. Dominic, which is incorporated in Ossining. The campus for the convent sprawls across a borderline separating Ossining from New Castle. There is no dispute that the two zip codes used by the Sisters, 10562 and 10545, are both classified, according to the United States Post Office website, as Ossining. There is also no dispute that, for decades, the Sisters have voted in Ossining.
Moreover, in 1975, there was a decision and order of the Supreme Court, Westchester County, which addressed the Sisters’ residence (but for very different purposes, and is thus not ultimately relevant here). In that decision, Justice Ruskin observed that “the boundary line between the Town of Ossining and the Town of New Castle crosses somewhere in the grounds of the Convent,” and that some buildings are located on each side of the divide. Since this issue was first litigated in 1975, the court finds that petitioners should have discovered this problem sooner. (Indeed, since Mr. Tripodi is presently an Ossining town councilman, the court would be surprised if he only just learned of the border issue in October 2013.) Rather than dismiss the action summarily based on laches, however (Continental Cas. Co. v Employers Ins. Co. of Wausau, 60 AD3d 128 [1st Dept 2008]), the court finds that it is important to reach the merits of this issue at this time.
Mr. Tripodi’s October 16th letter to the Board also states that the residents of 10 Pinesbridge Road vote in the same polling place as the residents of 100 Ryder Road — which is the United Parcel Service address for the Sisters, according to their website.[1]
*286 On October 30, 2013, the court held a hearing on this matter.[2] Counsel for the parties were present throughout. Also present throughout the proceedings was an assistant county attorney, as well as counsel for the nonparty Sisters. The court took testimony from two witnesses: Thomas Puglia, a member of the “GIS” department within the Board of Elections (although he never explained what “GIS” means, it has to do with mapping), and Sister Janice McLoughlin, the present president of the Sisters.
Mr. Puglia testified that he was asked to verify where the 10 Pinesbridge Road address is located. This address, he testified, is considered to be in New Castle. Mr. Puglia also testified that if a building straddles two municipalities, the test, as he was instructed by his colleagues at the Board, is where the front door lies. This is the case even if the bulk of the building is in a different municipality. Mr. Puglia also testified that since he has been with the Board, approximately three years, the Sisters have been in Ossining District 25.
Sister Janice McLoughlin testified that the Sisters have been “residents of Ossining” for over 100 years, since celebrating their 100th anniversary in 2012. She testified that the Sisters’ ties to Ossining are significant, including that they train for missions in Ossining; they have a booth at the Ossining fair; they assist at the Open Door medical facility in Ossining; they participate in an interfaith religious group in Ossining; some of the sisters teach in St. Anne’s Parish in Ossining; some of the sisters work with an environmental group in Ossining; and some of the sisters minister at Sing Sing prison in Ossining, among other things.
Sister McLoughlin further testified that the main building on the campus, called the “Mother House” or “Center House,” has two doors. Both doors, according to Sister McLoughlin’s testimony, are in Ossining. Sister McLoughlin indicated where the doors are in reference to the color aerial map in evidence, showing the court that the front door is just below the dividing line, in Ossining. The back door, which she called the “nursing home door,” is further into Ossining. A small portion of the Mother House is in New Castle. When a fire alarm occurs at the Mother House, the Ossining Fire Department responds. The *287 Sisters receive all of their mail in the Mother House, whether addressed to 100 Ryder Road or 10 Pinesbridge Road.
Sister McLoughlin testified that, in her opinion, the “nursing home door” is 100 Ryder Road. She further testified that, in her opinion, the front door, which is also in Ossining, is 10 Pines-bridge Road. A review of the large map introduced into evidence by Commissioner Colety as exhibit D shows that a portion of the 10 Pinesbridge Road property is actually over the Board’s electoral district dividing line in Ossining. The front door to the Mother House is, according to this map, in Ossining, Legislative District 9 (the 25th Election District).
Sister McLoughlin testified that the polling place for the Sisters is in the Mother House. She further testified that approximately half of the 480 members of the Sisters are overseas. The overseas Sisters vote by absentee ballot in Ossining.
Sister McLoughlin also testified that, in her opinion, the Mary Rogers College building and the Cloisters buildings are firmly in New Castle. These buildings contain very few bedrooms. Sister McLoughlin testified that she does not believe that either of these buildings have a street address. Most, if not all, of the New Castle construction permits and applications introduced into evidence by Commissioner Colety concerned these buildings alone.
The Motion to Dismiss
Turning to the motion to dismiss the petition first, the court finds that the petition need not be dismissed for failure to name necessary parties. Although Commissioner LaFayette argues that Election Law § 16-108 must apply here, in which case all of the sisters are necessary parties, the court disagrees. That section of the Election Law plainly refers to the cancellation of a registration. Petitioners here do not wish to cancel the sisters’ registrations, but merely to change them from one district to another. (See Election Law § 5-226 [1] [“If any voter has been registered in a wrong election district, the board of elections shall, if he is a qualified voter in any election district within the jurisdiction of such board, change his registration to the correct election district”].)
There is no provision of the Election Law that requires voters to be parties to a redistricting or change of address litigation. (See Jerry H. Goldfeder, Goldfeder’s Modern Election Law, ch 4 at 58-59 n 28 [3d ed 2012].) Although it concerned a different issue, Matter of Messina v Albany County Bd. of Elections (66 *288 AD3d 1111 [3d Dept 2009]) is instructional. In that case, the Third Department held that, in an action challenging the validity of absentee ballots, the absentee voters themselves did not need to be made parties. So here too, the voters — the Sisters— need not be made parties, as there is no provision in the Election Law that requires their addition.
Nor is the action time-barred. As discussed above, although the court is concerned that petitioners waited so long to raise this issue before the Board and the court, the action that petitioners are challenging is the Board’s refusal to change the place of the sisters’ registrations. This occurred with the writing of the October 23rd letter. This litigation was commenced on the same day. Petitioners are not challenging the sisters’ actual registrations (which occurred over a period of years). Nor are petitioners challenging the most recent redistricting in 2011. As an aside, the court notes that after the redistricting in 2011, the Sisters continued to vote in Ossining.
Finally, the court finds that the petition does state a cause of action over which this court has jurisdiction. If the registrations are in the wrong location, it is up to the court to correct the error. {See Election Law § 16-100 [1] [“The supreme court is vested with jurisdiction to summarily determine any question of law or fact arising as to any subject set forth in this article, which shall be construed liberally”].) Research has revealed that many cases arise under this section, although none appear to discuss this provision expressly. {See generally Matter of Barron v Board of Elections in City of N.Y., 11 NY3d 745 [2008].)
Accordingly, the court denies the motion to dismiss in its entirety.
The Petition
Turning to the petition, the court initially rejects petitioners’ argument that the determination of the correct voting locale is a merely ministerial action. While it may well be ministerial for the Board to move the Sisters from District 4 to District 9, once an action of this nature has reached the court, it is no longer ministerial. Rather, it has long been the case that issues concerning where voters should be registered “should be determined only after the court has heard proof which contemplates the swearing of witnesses and the recording of their testimony.” (Matter of Palla v Suffolk County Bd. of Elections, 31 NY2d 36, 45, 47 [1972] [citations and internal quotation marks omitted] [“residence for the purposes of registration and voting imports not only an intention to reside at a fixed place, *289 but also personal presence in that place coupled with conduct which bespeaks of such an intent”].) As set forth in Goldfeder’s Modern Election Law (ch 2 at 5 [3d ed 2012]), “there is no bright line test for residency. The Election Law is general, and the ‘standard’ for residence is fact-driven.” (See also Matter of Willkie v Delaware County Bd. of Elections, 55 AD3d 1088, 1090 [3d Dept 2008] [after intensive fact-finding, petitioners could vote in Bovina, despite also having residences in another city, where they demonstrated “genuine, long-term contacts created out of a true desire to become part of the Bovina community”].)
As set forth in Election Law § 5-104 (2),[3] once the Board has determined residence, it is “presumptive evidence of a person’s residence for voting purposes.” That means that the Board’s earlier determinations over the years that the Sisters are Ossining voters are presumptively correct. (See Matter of Hosley v Curry, 85 NY2d 447, 452 [1995] [“the Board of Elections’ prior determination (is) statutorily deemed presumptive evidence of respondent’s residence for voting purposes”]; Matter of Bressler v Holt-Harris, 37 AD2d 898 [3d Dept 1971].)
This presumption carries a good deal of weight. Petitioners bear the burden of trying to overturn the Board’s determination, and they must do so with “clear and convincing evidence.” (Matter of Willis v Suffolk County Bd. of Elections, 54 AD3d 436, 437 [2d Dept 2008]; see also Matter of Rosenthal v Kelly, 275 AD2d 429, 429 [2d Dept 2000] [“The party alleging the change of domicile has the burden of proving the change by clear and convincing evidence”]; Li v Grenfell, 20 Misc 3d 1101[A], 2008 NY Slip Op 51180[U] [Sup Ct, Nassau County, June 10, 2008] [burden of proof is clear and convincing evidence].)
As set forth above, it is clear that the Sisters consider themselves to be residents of Ossining. Their ties to that community are long, deep, and, this court is sure, widely appreciated. It is also clear, according to the map introduced into evidence as exhibit D, that there is a fraction of the 10 Pinesbridge Road parcel that is over the border in Ossining. It is further quite clear that the (very important) front door to the Mother House is in Ossining.
Accordingly, the court finds that petitioners did not “sustain [their] evidentiary burden of establishing by clear and convinc *290 ing evidence” that the Sisters should properly be relocated for election purposes from Ossining Electoral District 25 to a district in the Town of New Castle, and thus dismisses the petition. (Matter of Johnson v Simpson, 43 AD3d 478, 478 [2d Dept 2007].)

. Given the electronic resources available today, there is no reason that the court cannot take judicial notice of these websites for purposes of observing what they state (rather than the accuracy of the information thereon). (Matter of Transtechnology Corp. v Assessor, 71 AD3d 1034 [2d Dept 2010].)

. Election Law § 16-116 states, in relevant part, that “[a] special proceeding under the foregoing provisions of this article shall be heard upon a verified petition and such oral or written proof as may be offered.”

. The Board must take into account, in determining residence, a voter’s “expressed intent, his conduct and all attendant surrounding circumstances relating thereto.” (Election Law § 5-104 [2].)