██ In the Matter of HALL F. WILLKIE et al., Respondents, v DELAWARE COUNTY BOARD OF ELECTIONS, Appellant. [865 NYS2d 739]—

Spain, J. Appeal from an order of the Supreme Court (Dowd, J.), entered November 1, 2007 in Otsego County, which, among other things, granted petitioners' application, in a combined proceeding pursuant to Election Law § 16-108 and action for declaratory judgment, to reinstate their voter registrations.

Following the passage of a zoning ordinance in the Town of Bovina, Delaware County, which was publicly supported by each petitioner, an opponent of the ordinance filed affidavits with respondent challenging the voter registrations of each petitioner on the basis that he or she was not a resident of Bovina within the meaning of the Election Law (*see* Election Law § 5-220). In response, petitioners provided documentary evidence of their respective ties to Bovina. After reviewing this evidence, together with investigations conducted by the Delaware County Sheriff's Department (*see* Election Law § 5-702) which revealed that petitioners' Bovina homes were not used full time, respondent determined that petitioners Hall F. Willkie, Juliet F. Lauricella, Thomas A. Lauricella, David Hendricks and Stephen Robbins did not reside in Bovina and, consequently, were not qualified to vote there. Additionally, respondent placed the registrations of petitioners Julianne Bond-Shapiro, David Spry and Maria Spry

in inactive status after correspondence sent to their respective residences in Bovina was returned as unclaimed (*see* Election Law § 5-213).

Petitioners subsequently commenced this proceeding seeking an order directing respondent to reinstate their voter registrations in Bovina, and a declaration that the "eligibility of dual residents to register and vote at a given residence [should] be determined by considering the resident's expressed intent, his or her renunciation of the right to vote elsewhere, and whether or not such person has legitimate, significant and continuing attachments to his or her voting residence of choice." Petitioners also requested an injunction enjoining respondent from employing any standard other than that elucidated above. Supreme Court granted petitioners' application in its entirety and respondent now appeals.

For voting purposes, we conclude that petitioners are, indeed, residents of Bovina. Ordinarily, respondent's factual determinations are presumptive evidence of a petitioner's voting residence (*see* Election Law § 5-104 [2]; *Matter of Bressler v Holt-Harris*, 37 AD2d 898, 898 [1971], *affd* 30 NY2d 529 [1972]). Here, however, no presumption arose because respondent did not apply the correct rule of law in determining the issue. Election Law § 1-104 (22) defines a residence as "that place where a person maintains a fixed, permanent and principal home and to which he [or she], wherever temporarily located, always intends to return." Although the plain language of the statute—and opinions expressed in dissent over the years (*see People v O'Hara*, 96 NY2d 378, 386-390 [2001, Rosenblatt, J., dissenting]; *Matter of Bressler v Holt-Harris*, 30 NY2d 529, 530-532 [1972, Jasen, J., dissenting]; *Matter of Gallagher v Dinkins*, 41 AD2d 946, 947-948 [1973, Martuscello, J., dissenting], *affd* 32 NY2d 839 [1973]; *Matter of Gladwin v Power*, 21 AD2d 665 [1964, Steuer, J., dissenting])—would support respondent's interpretation of "residence" as the equivalent of domicile, requiring a finding that the individual has more significant contacts to that place than any other, the Court of Appeals has not interpreted the statute so narrowly. Indeed, it is clear that the Election Law "does not preclude a person from having two residences and choosing one for election purposes provided he or she has 'legitimate, significant and continuing attachments' to that residence" (*Matter of Isabella v Hotaling*, 207 AD2d 648, 650 [1994], *lv denied* 84 NY2d 801 [1994], quoting *Matter of Ferguson v McNab*, 60 NY2d 598, 600 [1983]; *see People v O'Hara*, 96 NY2d at 385).

"The crucial determination whether a particular residence

complies with the requirements of the Election Law is that the individual must manifest an intent, coupled with physical presence 'without any aura of sham' " (*People v O'Hara*, 96 NY2d at 385, quoting *Matter of Gallagher v Dinkins*, 41 AD2d at 947; *see Matter of Shafer v Dorsey*, 43 AD3d 621, 622 [2007], *lv denied* 9 NY3d 804 [2007]). Election Law § 5-104 (2) provides that, "[i]n determining a voter's qualification to register and vote, the board [of elections should] consider, in addition to the [voter's] expressed intent, his [or her] conduct and all attendant surrounding circumstances relating thereto," including, among other things, "business pursuits, employment, income sources, residence for income tax purposes, age, marital status, residence of parents, spouse and children, . . . sites of personal and real property . . . , motor vehicle and other personal property registration, and other such factors that it may reasonably deem necessary."

We find that each petitioner herein has demonstrated significant and genuine contacts with Bovina such that his or her choice of Bovina as his or her residence for voting purposes should have been honored. Six of the eight petitioners established that they have a home in Bovina and, although they live and work in New York City during the week, they spend most weekends and vacations in Bovina. Further, these petitioners demonstrated that their ties to Bovina were not a sham for voting purposes, but genuine, long-term contacts created out of a true desire to become part of the Bovina community. For example, Willkie has owned his home in Bovina since 1985 and lists his Bovina address on two separate bank accounts. Hendricks and his life partner purchased their home in Bovina in 1994 and Hendricks has been registered to vote in Bovina since 1996. Bond-Shapiro maintains a home in Bovina Center, having lived with her boyfriend in his family home since 2002.* The Sprys purchased their Bovina home in 1991 and have been registered to vote in Bovina since that time. Robbins purchased his home in Bovina in 1995 and lists his Bovina address on two separate bank accounts. He registered to vote in Bovina in 1996 and has remained registered there since that time.

In the case of each of these petitioners, their New York City address is listed on their income tax returns as their permanent home address. However, each petitioner listed the Bovina address on his or her driver's license and there is nothing in the record to indicate that any petitioner voted elsewhere while registered to vote in Bovina. Further, in their own words,

---

* While this home is owned by members of his family, he and Bond-Shapiro are reported to be in negotiations with them to purchase the home.

petitioners expressed the fact that, although their employment requires them to maintain another residence, their intent is to spend as much of their lives in Bovina as possible. The Lauricellas are distinct in that their Bovina home is owned jointly with their children. The home was purchased in 1995 and has been utilized by them and their extended family on weekends and for vacations and has never been rented. Further, the Lauricellas do not own another residence and had been residing with their daughter and son-in-law in West Nyack, Rockland County, to assist in caring for their grandchildren. They utilize a Bovina post office box as their mailing address for all purposes and clearly expressed their intent to someday live full-time in Bovina.

Significantly, the inquiry is not which of petitioners' dual residences is "the more appropriate one" for voting purposes, but whether the residence held by petitioners is a legitimate one (*People v O'Hara*, 96 NY2d at 385). The record herein is devoid of any suggestion that any petitioner herein has attempted to "create an address solely for the purpose of circumventing residency requirements" (*id.*). Under these circumstances, where petitioners have renounced their right to vote elsewhere and manifested an intent to reside long term in Bovina, coupled with a legitimate and significant physical presence, we find no basis upon which to disturb Supreme Court's determination that petitioners have successfully established their voting residences in Bovina (*see id.*; *Matter of Ferguson v McNab*, 96 AD2d 916, 917 [1983], *affd* 60 NY2d 598 [1983]; *Matter of Shafer v Dorsey*, 43 AD3d at 622; *Matter of Bressler v Holt-Harris*, 37 AD2d at 899; *see also Matter of Geller v Lasher*, 196 AD2d 613, 614 [1993], *lv denied* 82 NY2d 654 [1993]; *Matter of Umland v Board of Elections of City of N.Y.*, 143 AD2d 240, 241-242 [1988]; *Matter of Gallagher v Dinkins*, 41 AD2d at 947; *Matter of Gladwin v Power*, 21 AD2d at 665; *cf. Matter of Isabella v Hotaling*, 207 AD2d at 650; *Matter of Ramos v Gomez*, 196 AD2d 620, 621 [1993]).

Turning to respondent's challenge to the injunctive relief awarded by Supreme Court, we find that the court erred in enjoining respondent from employing—in the future—any legal standard other than that specifically elucidated in its order when determining the eligibility of dual residents to register and vote. While Supreme Court has the discretion to fashion permanent injunctive relief under appropriate circumstances (*see e.g. Matter of Hebel v West*, 25 AD3d 172, 177-178 [2005], *lv denied* 7 NY3d 706 [2006]), this injunction, at best, compels respondent to follow the law; "[i]t is, in other words, 'little more than a direction to do right in the future' " (*Gimbel Bros. v*

*Brook Shopping Ctrs.*, 118 AD2d 532, 536 [1986], quoting *Earl v Brewer*, 248 App Div 314, 315 [1936], *affd* 273 NY 669 [1937]). As respondent is already obligated to follow the law and there is nothing in the record to suggest that it will not do so, "the extraordinary relief of an injunction is unnecessary and inappropriate" (*Van Laak v Malone*, 92 AD2d 964, 966 [1983]; *see also Matter of Town of Dickinson v County of Broome*, 183 AD2d 1013, 1015 [1992]).

Mercure, J.P., Carpinello, Malone Jr. and Stein, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted injunctive relief, and, as so modified, affirmed.