*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  May 21, 2015                    518079
_____

In the Matter of GARY D. MAAS,
                    Respondent,

        v

RODNEY GAEBEL et al., as
    Commissioners of the
    Sullivan County Board of                OPINION AND ORDER
    Elections, et al.,
                    Respondents,
        and

RUBIN BRAUNSTEIN et al.,
                    Appellants.
_____

Calendar Date:  March 24, 2015

Before:  Peters, P.J., Egan Jr., Rose and Lynch, JJ.

                    _____

        Gail B. Rubenfeld, Monticello, for appellants.

        Newberg Law Offices, Monticello (Marvin Newberg of
counsel), for Gary D. Maas, respondent.

                    _____


Peters, P.J.

        Appeal from an order of the Supreme Court (Schick, J.),
entered December 26, 2013 in Sullivan County, which, among other
things, partially granted petitioner's application, in a
proceeding pursuant to Election Law § 16-106, to, among other
things, declare invalid certain absentee ballots cast for certain
public offices in the Town of Cochecton at the November 5, 2013
general election.

Petitioner, the Vice-Chair of the Sullivan County Republican Committee, filed affidavits with the Sullivan County Board of Elections (hereinafter the Board) in October 2013 challenging the eligibility of 29 registered voters in the Town of Cochecton, Sullivan County on the basis that each was not a resident of the Town within the meaning of the Election Law (see Election Law § 5-220). Sixteen of the challenged voters are shareholders of apartments at the Lake Huntington Summer Community cooperative located in Lake Huntington, Sullivan County (hereinafter collectively referred to as the Lake Huntington voters). Upon receipt of the challenges, the Board notified the 29 challenged voters and, pursuant to its duty to investigate (see Election Law § 5-220 [1]), requested that each complete a detailed questionnaire. Following their review of the questionnaires that had been returned, respondents Rodney Gaebel and Ann Prusinski, the Commissioners of the Board, disagreed as to whether petitioner's challenges should be granted, resulting in a ruling by the Board that the voter registrations would stand (see Election Law § 3-212 [2]).

Petitioner then commenced this proceeding pursuant to Election Law § 16-106 challenging the Board's determination and seeking an order directing that the challenged voters' absentee ballots for the November 2013 general election be declared invalid and their names removed from the Town's registration rolls. Following an evidentiary hearing, Supreme Court partially granted the petition, concluding, as relevant here, that the Lake Huntington voters were not residents of the Town for voting purposes. The Lake Huntington voters appeal.[1]

The Board's determination upholding the voter registrations at issue constituted presumptive evidence of the Lake Huntington voters' residence for voting purposes; thus, petitioner was saddled with the weighty burden of proffering sufficient evidence to overcome that presumption (see Election Law § 5-104 [2];

---

[1] Although a notice of appeal was promptly filed by the Lake Huntington voters following entry of Supreme Court's December 18, 2013 order, the appeal was not perfected until August 25, 2014 and no motion for a preference was made.

Matter of Hosley v Curry, 85 NY2d 447, 452 [1995]; Matter of Amedore v Peterson, 102 AD3d 995, 998-999 [2013], lv denied 20 NY3d 1006 [2013]; Matter of Dorman v Scaringe, 245 AD2d 949, 950 [1997], lv denied 91 NY2d 813 [1998]; Matter of Bressler v Holt-Harris, 37 AD2d 898, 898 [1971], affd on op below 30 NY2d 529 [1972]).  The Election Law defines "residence" as "that place where a person maintains a fixed, permanent and principal home and to which he [or she], wherever temporarily located, always intends to return" (Election Law § 1-104 [22]; see Matter of Stewart v Chautauqua County Bd. of Elections, 14 NY3d 139, 146 [2010]; People v O'Hara, 96 NY2d 378, 384 [2001]).  As the courts of this state have repeatedly explained, the Election Law "does not preclude a person from having two residences and choosing one for election purposes provided he or she has 'legitimate, significant and continuing attachments' to that residence" (Matter of Isabella v Hotaling, 207 AD2d 648, 650 [1994], lv denied 84 NY2d 801 [1994], quoting Matter of Ferguson v McNab, 60 NY2d 598, 600 [1983]; accord Matter of Willkie v Delaware County Bd. of Elections, 55 AD3d 1088, 1089 [2008]).  "The crucial [factor in the] determination [of] whether a particular residence complies with the requirements of the Election Law is that the individual must manifest an intent, coupled with physical presence 'without any aura of sham'" (People v O'Hara, 96 NY2d at 385, quoting Matter of Gallagher v Dinkins, 41 AD2d 946, 947 [1973], affd 32 NY2d 839 [1973]; accord Matter of Willkie v Delaware County Bd. of Elections, 55 AD3d at 1089-1090; see Matter of Weiss v Teachout, 120 AD3d 701, 702 [2014]; Matter of Stewart v Chautauqua County Bd. of Elections, 69 AD3d 1298, 1300 [2010], affd 14 NY3d 139 [2010]).

Applying these principles to the Lake Huntington voters, we find that they are residents of the Town within the meaning of the Election Law.  Each of the Lake Huntington voters has owned his or her cooperative home for nearly a decade, at the least, and several have resided there for more than 30 years.  The cooperative community in which their homes are located is seasonal, operating from mid-May to mid-October of each year. While the water supply is shut off until the resumption of operations the following year, the homes remain accessible year-round.  All of the Lake Huntington voters own or occupy another residence outside of Sullivan County, yet they each return to

their Lake Huntington homes every year for extended stays from the spring through the fall.  Further, each pays his or her proportionate share of local property and school taxes, as well as water and sewer fees.  While none of the Lake Huntington voters has ever obtained employment within the Town, enrolled children in the Town's schools or utilized their Lake Huntington address on his or her driver's license, vehicle registrations or tax returns, and all were previously registered to vote outside of Sullivan County, the evidence presented at the hearing makes clear that "their ties to [the Town] were not a sham for voting purposes, but genuine, long-term contacts created out of a true desire to become part of the [Lake Huntington] community" (Matter of Willkie v Delaware County Bd. of Elections, 55 AD3d at 1090).

Two of the Lake Huntington voters provided testimony at the hearing that was stipulated to be representative of that of the remaining Lake Huntington voters.  Respondent Peter Glick, who has owned his Lake Huntington residence since 1981, attested to his family's continuous use of the home during that time and expressed his intent to use this residence for the "indefinite future."  He explained that, during the five-month period from mid-May to mid-October, he and his family spend weekends, and at times a week or two, at his Lake Huntington home and otherwise try to "get up there whenever [they] can."  When his children were younger, Glick's wife and children would spend the entire summer there.  Glick noted that his Lake Huntington residence remains furnished year round, as are those of other residents in the community, is adorned with family pictures and has been renovated and improved through the use of local contractors.  Glick also detailed his active involvement in the Lake Huntington community as well as his contributions to several nonprofit organizations within the Town.  Similarly, respondent Joan Enker testified that she has occupied her Lake Huntington home for approximately 35 years and that, during such time, it has been utilized by her children, extended family and friends.  Enker explained that she goes "back and forth" between her Lake Huntington home and her home in New Jersey and, in recent years, she has been spending more time at the Lake Huntington home.  Throughout the more than three decades that she and her husband have been shareholders at the cooperative, Enker has been involved in environmental groups in the community and has donated

to local organizations.  Like Glick, Enker testified that she and her family intend to remain at their Lake Huntington residence for the indefinite future.

In our view, these voters should not have been disenfranchised.  The evidence established that the Lake Huntington voters have legitimate, significant and continuing attachments to the Town for the indefinite future such that they should be permitted to choose their Lake Huntington residence for voting purposes (see Matter of Willkie v Delaware County Bd. of Elections, 55 AD3d at 1091; Matter of Shafer v Dorsey, 43 AD3d 621, 623 [2007], lv denied 9 NY3d 804 [2007]; Matter of Bressler v Holt-Harris, 37 AD2d at 898; compare Matter of Stewart v Chautauqua County Bd. of Elections, 14 NY3d at 147; Matter of Bastone v Cocco, 230 AD2d 950, 951 [1996], appeal dismissed and lv denied 88 NY2d 971 [1996]).  Supreme Court's conclusion to the contrary came on the heels of its faulty perception that "the issue is where their permanent home is as opposed to a vacation home."  Proceeding under that framework, the court determined that the "fixed, permanent and principal home" of the Lake Huntington voters is not their home at the cooperative, which is only open seasonally, but rather their "year-round permanent home."  The term "residence," however, has not been interpreted so restrictively as to "requir[e] a finding that the individual has more significant contacts to that place than any other" (Matter of Willkie v Delaware County Bd. of Elections, 55 AD3d at 1089).  We take this opportunity to reiterate that "the inquiry is not which of [the Lake Huntington voters'] dual residences is 'the more appropriate one' for voting purposes, but whether the residence held by [them] is a legitimate one" (id. at 1091, quoting People v O'Hara, 96 NY2d at 385).

Supreme Court's reliance on the motive behind the Lake Huntington voters' decision to change their voting residence also warrants discussion.  While acknowledging that the Lake Huntington voters "may very well have shown that [they] all . . . are residents of Lake Cochecton and they all have intent to return there, every year, and they all have significant ties to the Lake Cochecton community," Supreme Court expressed concern that the conceded purpose for their change in voting residence was, in part, to attempt to express their political views on the

issue of gas exploration within the community.  Yet, "[m]otives are immaterial, except as they indicate intention" (Matter of Hosley v Curry, 85 NY2d at 452 [internal quotation marks and citation omitted]; accord Matter of Larkin v Herbert, 185 AD2d 607, 608 [1992]).  Simply put, the fact that one's position on a specific political issue may serve as a motivating factor to register to vote in a place where he or she has established a bona fide residence does not render such residence a "sham."

On these facts, and absent an indication in the record that any of the Lake Huntington voters have attempted to "create an address solely for the purpose of circumventing residency requirements" (People v O'Hara, 96 NY2d at 385; accord Matter of Willkie v Delaware County Bd. of Elections, 55 AD3d at 1091; see Matter of Shafer v Dorsey, 43 AD3d at 623; compare Matter of Hosley v Curry, 207 AD2d 116, 119 [1995], revd on other grounds 85 NY2d 447 [1995]), we conclude that their Lake Huntington residences are, in fact, legitimate ones for voting purposes.  Accordingly, Supreme Court erred in declaring the Lake Huntington voters' absentee ballots invalid and directing that their names be stricken from the registry of voters.

Egan Jr., Rose and Lynch, JJ., concur.

ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as partially granted the petition, invalidated the absentee ballots of respondents Rubin Braunstein, Carol Cherry, Aaron Cohen, Joan Enkar, Warren Enkar, Randy Frankel, Deborah Friedman, Peter Glick, Toby Glick, Scott Groom, Theodore Haber, Marla Kessler, Pat Konecky, Robert Putz, Marlene Star and Souzin Thau and directed that their names be stricken from the registry of voters; petition dismissed to that extent and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court