OPINION OF THE COURT
Denise A. Hartman, J.
In these related proceedings,[1] Steven Glickman seeks an order validating designating petitions to be the candidate for the Working Families and Democratic Parties for Senator for the 55th District of New York; objectors Zackary Laffin, John D. Moffitt, Jr., and Silvio Palermo seek to invalidate the same petitions.[2] On July 28, 2016, the court held a teleconference with counsel for the candidate and the objectors, and determined that the sole issue for the court’s determination is whether Mr. Glickman meets the residency requirements of the New York State Constitution (art III, § 7). The court finds that, because Mr. Glickman has not been a resident of this state for five consecutive years preceding the start of the term of office he seeks, the objections must be sustained and the petitions invalidated.
The court held an evidentiary hearing on August 1, 2016. The Board of Elections provided the certified record in its possession, but took no position. The objectors offered into evidence voter registration records from Monroe County and Washington, D.C. Mr. Glickman’s counsel objected, and the court reserved judgment. Objectors’ counsel thereafter provided certified copies of the records in question. The court therefore receives the certified registration records into evidence. The objectors rested their case on the voter registration records. The parties each made oral summary judgment motions, which the court denied from the bench.
Mr. Glickman took the stand on his own behalf and submitted documentary evidence, including copies of lease agree- *912 merits, utility bills, and his New York driver’s license. Joseph Glickman (his father), Diana Blauw (his father’s girlfriend), and Leslie Brooks (his cousin) also testified on his behalf. The objectors called Kevin M. Connolly (a private investigator) and Sara Blauw (the daughter of his father’s girlfriend) in rebuttal.
Counsel for the objectors and the candidate submitted post-hearing memoranda of law. The objectors argue that because the candidate registered to vote and cast a ballot in Washington, D.C., and because “[vjoting and voter registration [are] dispositive of residency for the purposes” of the New York State Constitution, the candidate does not satisfy the State Constitution’s five-year residency requirement for senate candidates. Counsel further argues that the candidate did not satisfy the State Constitution’s one-year residency requirement for senate candidates because his registration changed from an address within the district to an address outside the district for approximately one month during the year preceding the election.
The candidate argues that the objectors have not met their burden of demonstrating by clear and convincing evidence that the candidate’s residence violates the State Constitution. With regard to the five-year period, the candidate argues that voting history is only a factor to be considered for purposes of determining residence, that candidates may have multiple residences, and that he maintained a residence in New York at all relevant times.
Legal Standard
The New York State Constitution provides that
“[n]o person shall serve as a member of the legislature unless he or she . . . has been a resident of the state of New York for five years, and, except as hereinafter otherwise prescribed, of the assembly or senate district for the twelve months immediately preceding his or her election” (NY Const, art HI, § 7).
The five-year period, like the one-year period, “must immediately precede the election” (Matter of Bourges v LeBlanc, 98 NY2d 418, 420 [2002]).[3] The Election Law definition of “residence” as “that place where a person maintains a fixed, permanent and principal home and to which he, wherever *913 temporarily located, always intends to return” applies to the constitutional residency requirements (see Election Law § 1-104 [22]; Matter of Weiss v Teachout, 120 AD3d 701, 701 [2d Dept 2014]; Matter of Stavisky v Koo, 54 AD3d 432, 434 [2d Dept 2008]).
A person “can maintain more than one bona fide residence” (People v O’Hara, 96 NY2d 378, 384 [2001]). So long as a residence meets the requirements of the State Constitution and Election Law, a person is free to choose which of multiple residences to denominate as his residence for purposes of voting or candidacy; the designated residence need not be the person’s primary residence or the one with which he has deeper or more meaningful ties (see Matter of Maas v Gaebel, 129 AD3d 178, 182 [3d Dept 2015]; Matter of Willkie v Delaware County Bd. of Elections, 55 AD3d 1088, 1089-1090 [3d Dept 2008]). “Critical to a determination that a certain residence is in compliance with the mandates of the Election Law is a finding that the individual manifests an intent, along with a physical presence, without any aura of sham” (Matter of Shafer v Dorsey, 43 AD3d 621, 622 [3d Dept 2007] [internal quotation marks omitted]; see Matter of Weiss v Teachout, 120 AD3d at 702). Presence and intent are evidenced by “significant and continuing attachments to” the locality of the claimed residence (Matter of Maas v Gaebel, 129 AD3d at 182). The burden of demonstrating by clear and convincing evidence that a claimed residence does not comport with the State Constitution rests on the objectors (Matter of Weiss v Teachout, 120 AD3d at 702; Matter of Stavisky v Koo, 54 AD3d at 433-434).
Five-Year Residency Requirement
The court first addresses the objectors’ threshold argument that, as a matter of law, registering to vote and casting a ballot in Washington, D.C. is determinative of the candidate’s designation of residence for purposes of New York State Constitution, article III, § 7, or whether it is, as the candidate argues, merely one factor to be considered in determining whether he meets the constitutional residency requirements. The court concludes that the candidate’s registration and admitted attempt to cast a vote in Washington, D.C. preclude him from claiming electoral residency in New York for an uninterrupted five-year period. In the interest of full development of the record in this expedited proceeding, the court also addresses all of the facts presented and concludes that if his *914 electoral status in Washington, D.C. is not dispositive, the objectors have failed to demonstrate that his assertion of continuous residential ties to New York has “the aura of sham.”
In an affirmed decision, the Appellate Division, Second Department has held that where a candidate “registered and voted in Bronx County in 1973,” he could not “be heard to claim that he was actually a resident of Westchester County during that period” (Matter of Thompson v Hayduk, 45 AD2d 955, 956 [2d Dept 1974], affd without op 34 NY2d 980 [1974]). Therefore, he did not meet the 12-month residency requirement for state senate candidates (id.)- On the other hand, the First Department in addressing the five-year residency requirement for state legislative candidates recently held that “tax returns and voting record [s]” from a state other than New York did not conclusively demonstrate that the candidate “did not intend to continue to reside in New York” (Matter of Jones v Blake, 120 AD3d 415, 416 [1st Dept 2014]).[4]
Although the First Department’s decision reflects the more recent trend liberalizing the concept of dual residences, the affirmed Second Department decision in Matter of Thompson v Hayduk appears to be binding on this court. In any event, the court is of the opinion that the latter decision is correct as a matter of logical analysis. Although a candidate may have more than one residence, when he designates one as his electoral residence for purposes of the State Constitution and Election Law, he has excluded all others (see Matter of Gorycki v Greenberg, 122 AD2d 913 [2d Dept 1986] [out-of-state registration cancels New York registration by operation of law]; Matter of Thompson v Hayduk, 45 AD2d at 956). In other words, a person may have significant connections to two locations that qualify as residences under the New York Constitution and Election Law, and can choose one as his electoral residence. But once the person makes that choice by intentionally *915 registering to vote, the other location is excluded and may not then be claimed as his electoral residence for the same period (cf. People v O’Hara, 96 NY2d at 385 [“an individual having two residences may choose one” (emphasis added)]).[5] Certainly, he cannot vote in two places in the same election year, even though he has two residences. It would be anomalous if he could claim in the same election year a residence for voting purposes but a different residence for candidacy purposes.
Here, Mr. Glickman conceded that he attempted to cast a ballot in Washington, D.C. in 2014, although he denied remembering actually signing or submitting a voter registration form there. The objectors submitted a Washington D.C. voter record, certified and under seal, showing that Mr. Glick-man registered to vote there on November 4, 2014. The court finds based on the certified voter registration record and Mr. Glickman’s testimony that he cast a ballot in Washington, D.C., that he did choose his electoral residence in Washington, D.C. in November 2014. Accordingly, he cannot claim his electoral residence to be in New York from November 2014 until he again registered to vote in New York in October 2015, when he returned to live here.[6] He therefore has not been a “resident” of New York for five consecutive years as required by the State Constitution, and his designating petition must be invalidated.
Were out-of-state registration and voting not dispositive, but merely factors for the court’s consideration, the court would *916 hold that the objectors had not met their burden of showing by clear and convincing evidence that Mr. Glickman did not have a qualifying residence in this state. He and other witnesses testified that, multiple times per year, he returned to — and stayed at — his father’s house on Broadmoor Drive in Tonawanda, New York, where he had lived just before he left for college in 2007. He kept personal belongings there, used that address for his driver’s license and bills, and would garage his vehicle there. He also testified that he maintained his membership in a New York synagogue for the entirety of the period in dispute, where he undertook the duty of shofar blower on Rosh Hashanah. His doctor and dentist were both located in New York for the period in question. And he testified that he always intended to return to New York.
It is true that Mr. Glickman also had significant attachments to the Washington, D.C. area. He testified that, beginning in 2007, he attended college and graduate school in Maryland until he graduated in May 2012 and lived in various transient residences during that time.[7] After obtaining his Master’s degree, he continued to live in Maryland for a year and then moved to Washington, D.C. in October 2013, where he lived in a “community organizers’ house” until March 2015. While living in Washington, D.C., Mr. Glickman took jobs with consulting firm Booz Allen Hamilton Inc. and teaching high school part time. Both were year-to-year contract jobs, and the former gave him flexibility to travel and work from home. And, of course, he registered to vote and at least attempted to cast a ballot in one election while he was in Washington, D.C.
But Mr. Glickman testified that, during this time, he was looking for a way to return to New York but could not find a desirable job. He in fact returned to his pre-college home in New York in March 2015. In October 2015, he moved to 207 Milburn Street in Rochester, has entered into two successive yearly leases, and lives, eats, and sleeps there. He has also registered to vote at the Milburn Street address. In any event, the proper focus of analysis is not whether New York is his primary address, but only whether the objectors have established that he does not have a bona fide residence here under the State Constitution and Election Law (Matter of Maas v Gaebel, 129 AD3d at 182).
*917 Based on the above-cited evidence, the entirety of Mr. Glick-man’s testimony, and the documentary evidence, the court concludes that before March 2015 (if by registering to vote and casting a ballot in Washington, D.C., he did not designate a residence as a matter of law) he maintained dual residences. The objectors failed to show that he did not maintain significant attachments to New York or that he did not intend to return here, “without any aura of sham.”
One-Year Residency Requirement
Although the court’s holding that the candidate’s choice to register and attempt to vote in Washington, D.C. requires invalidation of his designating petition, it will also analyze the objectors’ arguments with respect to the one-year residency requirement to provide a complete record for appellate review. The objectors have not shown by clear and convincing evidence that the candidate’s residence at 207 Milburn Street, Rochester, New York does not meet the standard set by the State Constitution and Election Law.
The testimony at the hearing left no question that Mr. Glick-man has resided at the Rochester address since October 2015. The evidence demonstrates that he signed a lease there, which he renewed in June 2016, he pays utilities there, and eats and sleeps there regularly.
The objectors’ argument that the candidate does not meet the one-year residency requirement, like their argument regarding the five-year residency requirement, is premised on a change of voter registration. In support, they submitted copies, certified and under seal, of three New York State voter registration forms provided by the Monroe County Board of Elections. The first, dated October 8, 2015, lists Mr. Glickman’s registration address as 207 Milburn Street, Rochester, New York. The second, dated November 25, 2015, indicates that his residential address changed from 207 Milburn Street to 36 Lo-derdale Road, Rochester, New York, which is his father’s girlfriend’s address and outside the senatorial district. And the third, dated January 7, 2016, shows that he changed his residential address back to 207 Milburn Street, Rochester, New York.
In this instance, the change of registration did not represent a designation of residence under the State Constitution and Election Law. The court credits Mr. Glickman’s testimony that he never intentionally changed his registration from the *918 Milburn Street address to the Loderdale Road address. Both his testimony and the documentary evidence show that he immediately changed it back to Milburn Street upon discovery of the error. Nor did he ever attempt to vote under the Loderdale Road registration. In contrast, he left his Washington, D.C. registration in effect for nearly a year and cast a ballot there. Therefore, petitioner did not, as a matter of law, designate Lo-derdale Road as his residence under the State Constitution and Election Law. The court finds that the objectors have not otherwise demonstrated that the Milburn Street residence was not bona fide (see Matter of Shafer, 43 AD3d at 622).
Accordingly, it is ordered that Ontario County petition, index No. 114269-16, is granted; it is ordered that Albany County petitions, index Nos. 4130-16 and 4131-16, are denied; it is ordered that the petitions designating Steven Glickman as the Democratic and Working Families Parties candidate are invalidated.

. On August 1, 2016, the court executed an order consolidating the three proceedings for purposes of an evidentiary hearing, briefing, and decision only.

. The Ontario County Board of Elections (respondent in the proceedings filed in Albany County) submitted an affidavit taking no position on the petitions. The Monroe County Board of Elections has not appeared.

. The parties stipulated that the five-year period should be measured from the date that the term of office will begin, while the one-year period should be measured from the day of voting.

. There are a number of cases where the Courts considered the place of voter registration as some evidence of residency, but in those cases the candidate sought to use the evidence to establish a “continuity of conduct” consistent with — not adverse to — her claimed residence (Matter of Berman v Weinstein, 64 AD2d 940, 941 [2d Dept 1978], lv denied 45 NY2d 707 [1978]; see Matter of Ferguson v McNab, 96 AD2d 916, 917 [2d Dept 1983], affd 60 NY2d 598 [1983]; Matter of Gallagher v Dinkins, 41 AD2d 946, 947 [2d Dept 1973], affd 32 NY2d 839 [1973]). And in Matter of Camardi v Sinawski (297 AD2d 357, 358 [2d Dept 2002]), the candidate was precluded from claiming residency at a new address because he had previously voted in a different locale and did not change his registration when he recently moved.

. Like Schrodinger’s Cat, which exists simultaneously in two states, alive and dead, until its state is fixed by the observer, a candidate may have two homes that qualify as residences for purposes of the State Constitution and Election Law until he designates one to be his residence for that year by registering or voting (see Rachel Feltman, Schrodinger’s Cat Just Got Even 'Weirder (And Even More Confusing), The Washington Post, May 27, 2016, available at https://www.washingtonpost.com/news/ speaking-of-science/wp/ 2016/05/27/schrodingers-cat-just-got-even-weirder-and-even-more-confusing/).

. To register in Washington, D.C., the voter must fill out an application in which he must attest that he meets the registration requirements (see DC Code § 1-1001.07 [a] [2]). In order to do so, he must be a “qualified elector,” which further requires that he have “maintained a residence in the District for at least 30 days preceding the next election” (DC Code § 1-1001.02 [2] [C]). Similarly to New York,
“[t]he term ‘residence,’ for purposes of voting, means the principal or primary home or place of abode of a person. Principal or primary home or place of abode is that home or place in which the person’s habitation is fixed and to which a person, whenever he or she is absent, has the present intention of returning after a departure or absence therefrom, regardless of the duration of the absence” (DC Code § 1-1001.02 [16] [A]).

. Election Law § 5-104 (1) provides that “no person shall be deemed to have gained or lost a residence by reason of his presence or absence . . . while a student of any institution of learning.”