Egan Jr., J.
(dissenting). Zackary Laffin, Silvio Palermo and John D. Moffit Jr. (hereinafter collectively referred to as objectors) filed written objections with respondent New York State Board of Elections challenging, insofar as is relevant here, the validity of the designating petitions naming Steven Glickman as the Democratic Party and Working Families Party candidate for the public office of State Senator for the 55th Senate District in the September 13, 2016 primary election. Specifically, objectors argued that Glickman failed to meet the residency requirements set forth in NY Constitution, article III, § 7, which provides, in relevant part, as follows: “No person shall serve as a member of the legislature unless he or she is a citizen of the United States and has been a resident of the state of New York for five years, and, except as hereinafter otherwise prescribed, of the assembly or senate district for the [12] months immediately preceding his or her election.” The parties stipulated that the five-year state residency period should be measured from the date upon which the term of office will commence, and that the one-year district residency requirement should be measured from the date of the election. Accordingly, in determining whether, as a threshold matter, Glickman meets the five-year residency requirement, this Court must look to his activities in the five years preceding January 1, 2017.
Both New York, where Glickman currently resides and has been registered to vote since May 2015, and the District of Columbia, where Glickman previously resided and registered to vote in November 2014, define “residence” in substantially similar fashions (see Election Law § 1-104 [22]; DC Code § *735 1-1001.02 [16] [A]),[1] and there is absolutely no question that an individual may maintain more than one residence — either in different states or in different communities within the same state — at the same time (see People v O’Hara, 96 NY2d 378, 384 [2001]; Matter of Maas v Gaebel, 129 AD3d 178, 180 [2015]; Matter of Willkie v Delaware County Bd. of Elections, 55 AD3d 1088, 1089 [2008]). That said, an individual who maintains multiple residences must choose one of them for electoral purposes — specifically, the residence to which he or she “has legitimate, significant and continuing attachments” (People v O’Hara, 96 NY2d at 385 [internal quotation marks and citation omitted]; accord Matter of Maas v Gaebel, 129 AD3d at 180; Matter of Willkie v Delaware County Bd. of Elections, 55 AD3d at 1089).
Although Glickman offered inconsistent testimony as to whether he ever registered to vote in the District of Columbia— variously testifying that he was registered to vote somewhere outside of New York at one point in time, that he never completed a voter registration form in the District of Columbia and that he did not remember if he ever filled out such a form— and the record on appeal does not contain the registration form itself, the voter profile maintained by the District of Columbia Board of Elections, which was entered into evidence at the hearing, nonetheless reflects that Glickman indeed registered to vote in the District of Columbia on November 4, 2014. Notably, one of the requirements of a “qualified elector” in that locale is that he or she “[h]as maintained a residence in the District [of Columbia] for at least 30 days preceding the next election and does not claim voting residence or right to vote in any state or territory” (DC Code § 1-1001.02 [2] [C] [emphasis added]).
Even assuming that Glickman was unaware of that particular requirement, we nonetheless are satisfied that, once Glick-man registered to vote in the District of Columbia in November 2014, he effectively ended his residency in New York for purposes of NY Constitution, article III, § 7 (see Matter of Thompson v Hayduk, 45 AD2d 955, 956 [1974], affd 34 NY2d *736 980 [1974]). In other words, while Glickman indeed could have maintained dual residences in New York and the District of Columbia during the five-year period at issue, he could only utilize one of those residences for electoral purposes — specifically, he could not purport to be a registered and eligible voter in the District of Columbia while simultaneously claiming to be a resident of New York for purposes of fulfilling the five-year residency requirement. Simply put, by registering to vote in the District of Columbia in November 2014, Glickman effectively broke whatever New York chain of residency he previously enjoyed — a period of New York residency that did not begin again for purposes of computing the five-year residency period set forth in NY Constitution, article III, § 7 until Glick-man again registered to vote in New York in May 2015. For this reason alone, we would affirm Supreme Court’s order invalidating Glickman’s designating petitions.
That said, we are aware that the courts of this state consistently have held that “[t]he question of residence is a factual one, based on a variety of factors and circumstances” (Matter of Stavisky v Koo, 54 AD3d 432, 434 [2008]; accord Matter of Chaimowitz v Calcaterra, 76 AD3d 685, 686 [2010]) and, further, that the burden of proof here lies with objectors, who were required to establish, by clear and convincing evidence, that Glickman did not fulfill the five-year residency requirement in the first instance (see Matter of Weiss v Teachout, 120 AD3d 701, 702 [2014]). However, even assuming that Glickman did not — as we believe — effectively end his residency in New York solely by registering to vote in the District of Columbia in November 2014, we still are satisfied, upon due consideration of all the relevant factors and circumstances, that objectors met their burden of proof here and that Glickman’s designating petitions were properly invalidated.[2]
By Glickman’s own account, he graduated from college in 2011 and thereafter secured two internships in the greater Washington, D.C. area. After completing his Master’s degree in May 2012, Glickman continued to work and reside in that *737 general vicinity. Notably, Glickman lived in what he described as a community organizing house in Washington, D.C. from October 2013 to March 2015. Although Glickman returned to New York shortly thereafter, he continued his consulting position in Washington, D.C. — working remotely from various locations and “crash [ing] at a friend’s place” if he “ever needed to go back to [Washington,] D.C. for work.” Indeed, Glickman testified that he “[t]echnically” was “still employed” there at the time of the hearing and acknowledged that he did not take a leave of absence from that position until November 1, 2015. Such proof, in our view, when combined with Glickman’s 2014 voter registration in the District of Columbia, constitutes clear and convincing evidence that Glickman did not satisfy the five-year state residency requirement set forth in NY Constitution, article III, § 7. In light of this conclusion, we need not consider whether objectors also established that Glickman did not meet the one-year district residency requirement. Accordingly, for all of these reasons, we would affirm Supreme Court’s order.

. Election Law § 1-104 (22) defines residence as “that place where a person maintains a fixed, permanent and principal home and to which he [or she], wherever temporarily located, always intends to return.” Similarly, the term residence in the District of Columbia is defined as “the principal or primary home or place of abode of a person,” which, in turn, means “that home or place in which the person’s habitation is fixed and to which a person, whenever he or she is absent, has the present intention of returning after a departure or absence therefrom, regardless of the duration of the absence” (DC Code § 1-1001.02 [16] [A]).

. Contrary to the position adopted by the majority, we do not find the Court of Appeals’ decision in Matter of Hosley v Curry (85 NY2d 447 [1995]) to be dispositive' — in large measure because Mosley did not involve ascertaining whether the candidate at issue satisfied the five-year residency requirement set forth in NY Constitution, article III, § 7. More to the point, Hosley stands for nothing more than the well-settled proposition that a domicile, once acquired, continues until an individual engages in conduct that manifests a definitive intent to abandon one domicile and acquire another. We are satisfied that Glickman engaged in such affirmative conduct here and, hence, cannot satisfy the five-year New York residency requirement.