Matter of Hughes v Delaware County Bd. of Elections (2023 NY Slip Op 03431)

Matter of Hughes v Delaware County Bd. of Elections

2023 NY Slip Op 03431

Decided on June 26, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 26, 2023

CV-23-0859
[*1]In the Matter of Elizabeth M. Hughes et al., Appellants- Respondents,
v
Delaware County Board of Elections, Respondent, and Stewart Cohen, Respondent- Appellant, et al., Respondents.

Calendar Date:June 5, 2023

Before:Garry, P.J., Lynch, Aarons, Ceresia and McShan, JJ.

Daniel R. Belzil, Fleischmanns, for appellants-respondents.
Amy B. Merklen County Attorney, Delhi (D. Jeremy Rase of counsel), for Delaware County Board of Elections, respondent.
Perillo Hill, LLP, Sayville (John Ciampoli of counsel), for Stewart Cohen, respondent-appellant.

Per Curiam.
Cross-appeals from an order of the Supreme Court (Brian D. Burns, J.), entered May 11, 2023 in Delaware County, which, among other things, partially dismissed petitioners' application, in a proceeding pursuant to Election Law article 16, to determine the validity of certain voter registrations for the election for public offices in the Village of Fleischmanns held on March 21, 2023.
On February 14, 2023, petitioner Todd Pascarella, a candidate for Trustee of the Village of Fleischmanns, Delaware County, in the March 21, 2023 Village general election, filed the first in a series of postregistration challenge affidavits (see Election Law § 5-220 [1]). The affidavits, the last of which were filed on March 17, 2023, challenged enrolled voters' qualifications to be registered voters in the Village on the ground that they are not residents of the Village within the meaning of Election Law § 1-104 (22). On February 17, 2023, respondent Delaware County Board of Elections began an investigation conducted by the Delaware County Sheriff's office to address the challenges to the registrations of the enrolled voters. That investigation ultimately encompassed challenges to the voter registrations of over 100 voters, 81 of whom applied for and submitted absentee ballots in the 2023 Village election.
Prior to the 2023 Village election, petitioners, candidates running for public office in that election, commenced this proceeding by order to show cause. The petition alleged that the challenged voters had been improperly registered to vote in the Village, and sought, among other relief, to direct that their absentee ballots be set aside unopened, and requested a stay of the certification of that election pending the results of the Board's ongoing investigation into the challenged voters' registrations.[FN1] The petition is premised upon the contention that the challenged voters, most of whom are members of a religious congregation that organized the congregants' voter registrations in the Village, are not residents of the Village for voting purposes in that they live elsewhere for most of the year and only spend summers and intermittent weekends or vacations in the Village. Petitioners alleged that most of the challenged voters stay in property owned or controlled by the congregation and lack the type of significant attachments to the Village required to qualify as a resident of the Village for voting purposes (see Election Law § 1-104 [22]). After issue was joined, and while the Board's investigation was ongoing, Supreme Court conducted an evidentiary hearing and took testimony addressing the challenges to the residency of the challenged voters. In a May 2023 order, the court partially granted the petition, concluding that six of the challenged voters who submitted absentee ballots were not residents of the Village for voting purposes and that their ballots should not be opened or counted, and otherwise denied relief as to the remaining challenged voters who cast [*2]absentee ballots, ordering that their ballots be opened and counted.[FN2] This appeal and cross-appeal ensued.
Petitioners challenge Supreme Court's order to the extent that it found that 58 of the challenged voters who cast absentee ballots qualified as residents of the Village for voting purposes and permitted their absentee ballots to be opened and counted.[FN3] The Board supports petitioners' challenge to the court's order. Respondent Stewart Cohen, a candidate for Village Trustee in the 2023 Village election, cross-appeals, contending, among other things, that the six challenged voters who the court found were not residents were validly registered and their absentee ballots should be opened and counted. Notwithstanding the foregoing contentions, as well as the citation to Election Law § 16-106 in the petition, a review of the petition's allegations discloses that this is not a direct challenge to the challenged voters' absentee ballots under that statute. Rather, petitioners are challenging the voter registrations of the challenged voters based upon nonresidency under Election Law §§ 5-220 and 16-108.
The petition — filed before the 2023 Village election and prior to the submission of some of the challenged voters' absentee ballots, many of whom did not ultimately submit absentee ballots, and during the Board's ongoing investigation into pending voter registration challenges — repeatedly alleges that the voters at issue were "improperly registered" (emphasis added). The petition, like the Board's ongoing investigation, was premised upon and supported by Pascarella's postregistration challenge affidavits challenging the voters' registrations. The petition also noted that, because of the 10-day period between the voter-registration deadline and the election date for the 2023 Village election, it would be impossible for the Board to complete its investigation prior to the actual election.[FN4] In view of this truncated time frame, the primary relief requested in the petition is "to stay certification of the 2023 Village [e]lection pending the results of the [Board's] ongoing [registration] investigation," and an order directing respondent Diane Rossman, the Village Clerk, to set aside the unopened absentee ballots of the voters whose residency is being challenged pending the Board's investigation.[FN5] Although petitioners also seek an order striking the absentee ballots of any voter deemed to be improperly registered to vote, this requested relief is ancillary to a ruling that the challenged voters were not properly registered as voters and does not transform this proceeding challenging voter registrations into a challenge to the absentee ballots (compare Election Law §§ 5-220 and 16-108, with Election Law §§ 9-209 and 16-106).
Given our conclusion that petitioners are challenging the voter registrations of the challenged voters, petitioners were required to name, as necessary parties, the voters whose registrations were being challenged — i.e., "the person[*3][s] whose name[s] [are] sought to be stricken from the [voter] register" (Election Law § 16-108 [2]; see CPLR 1001 [a]; Matter of Fingar v Martin, 68 AD3d 1435, 1436 [3d Dept 2009]; see e.g. Matter of Maas v Gaebel, 129 AD3d 178, 180 [3d Dept 2015]; cf. Matter of Meyer v Whitney, 132 AD3d 1062, 1063 [3d Dept 2015], lv denied 26 NY3d 909 [2015]; Matter of Messina v Albany County Bd. of Elections, 66 AD3d 1111, 1113-1114 [3d Dept 2009], lv denied 13 NY3d 710 [2009]). The challenged voters would be "inequitably affected" by an order striking their voter registrations (CPLR 1001 [a]). Although the parties did not raise, nor did Supreme Court address, the failure to name the challenged voters as necessary parties, "a court may always consider whether there has been a failure to join a necessary party, including on its own motion, and for the first time on appeal" (Matter of Velez v New York State, Dept. of Corr. & Community Supervision, 163 AD3d 1210, 1211 [3d Dept 2018] [internal quotation marks and citations omitted]; see Town of Brookhaven v Chun Enters., 71 NY2d 953, 954-955 [1988]; City of New York v Long Is. Airports Limousine Serv. Corp., 48 NY2d 469, 475 [1979]; Matter of Lezette v Board of Educ. Hudson City School Dist., 35 NY2d 272, 282 [1974]; Matter of Smith v New York State Off. of the Attorney Gen., 110 AD3d 1201, 1204 [3d Dept 2013]). That said, this "[C]ourt may not, on its own initiative, add or direct the addition of a party" (Matter of Smith v New York State Off. of the Attorney Gen., 110 AD3d at 1204 [internal quotation marks and citation omitted]). The matter must therefore be remitted to Supreme Court to order the challenged voters to be joined if they are "subject to the jurisdiction of the court" (CPLR 1001 [b]) and, if not, "to permit [their] joinder by stipulation, motion or otherwise and, if joinder cannot be effectuated, the court must then determine whether the proceeding should be permitted to proceed in the absence of necessary parties" (Matter of Smith v New York State Off. of the Attorney Gen., 110 AD3d at 1205 [internal quotation marks, brackets and citation omitted]; see CPLR 1001 [b]; 1003; Matter of Velez v New York State, Dept. of Corr. & Community Supervision, 163 AD3d at 1212). In view of this determination, we express no opinion on the merits of the residency issue.
To the extent that petitioners maintain that their petition challenges the contested and set aside absentee ballots and requests that they be stricken, under the circumstances presented, a challenge to the absentee ballots and the sought remedy are not available by statute.[FN6] "In election cases, the field of the court's powers is limited to the specified matters, and the right to judicial redress depends on legislative enactment, and if the Legislature as a result of fixed policy or inadvertent omission fails to give such privilege, we have no power to supply the omission" (Matter of New York State Comm. of the Independence Party v New York State Bd[*4]. of Elections, 87 AD3d 806, 810 [3d Dept 2011] [internal quotation marks, brackets and citations omitted], lv denied 17 NY3d 706 [2011]). "[S]trict compliance with the Election Law" is compelled and "flexibility in statutory interpretation" is eschewed (Matter of Gross v Albany County Bd. of Elections, 3 NY3d 251, 258 [2004] [internal quotation marks and citation omitted]).
Under the relevant statutes, after a person has registered to vote, such registration can be contested in a postregistration challenge to the appropriate Board of Elections by the submission of an affidavit setting forth certain information (see Election Law § 5-220 [1]). Following the Board's receipt of a challenging affidavit, the Board "shall conduct an investigation of the voter's qualifications to remain registered" (Election Law § 5-220 [1]). There is no statutory timeline for that investigation and, where, as a here, the Board cannot complete its required investigation prior to "the next election at which the registrant could vote, it shall place his [or her] name on a challenge list as a person to be challenged when voting" (Election Law § 5-220 [2]). As to the handling of absentee ballots on or before the date of an election, prior to the enactment of the new Election Law § 9-209 (see L 2021, ch 763, § 1; Election Law § 9-209 et seq.), representatives of candidates and political parties — through so-called "watchers" — could lodge a challenge to the opening and counting of individual absentee ballots during the canvassing process (see Election Law former § 9-209 [2] [a] [i] [D]; [d]). The Legislature, however, rewrote and enacted a new Election Law § 9-209 and, in so doing, overhauled the grounds and procedure for canvassing absentee ballots. The Legislature created "a new, more streamlined process of canvassing absentee ballots" (Matter of Amedure v State of New York, 210 AD3d 1134, 1137 [3d Dept 2022]) with the intent of speeding up the counting of absentee, military, special and affidavit ballots and preventing long delays so that the results of elections could be obtained in a more expedited fashion (see Senate Introducer's Mem in Support, Bill Jacket, L 2021, ch 763, § 1).
To accomplish its policy objectives, the Legislature significantly limited objections and post-election judicial review of absentee ballots. Watchers may still observe the review of absentee ballots during canvassing, but they must now do so "without objection" (Election Law § 9-209 [5]). Election Law § 9-209 (2) allows for a limited initial examination of the absentee ballot envelopes and enumerates the exclusive criteria when determining the validity of a ballot.[FN7] If a ballot envelope is deemed invalid for a reason set forth in Election Law § 9-209 (2) (a), it will be set aside, not opened and then reviewed as provided by Election Law § 9-209 (8).[FN8] After that review, an objection can be made to the determination that a ballot is invalid, in which case "[s]uch ballot[ ] shall not be counted [*5]absent an order of the court" (Election Law § 9-209 [8] [e]).
As an initial matter, contrary to petitioners' assertion, Election Law § 9-209 applies to this case. In this regard, the provisions of the Election Law broadly govern, as relevant here, "the conduct of all elections at which voters of the state of New York may cast a ballot for the purpose of . . . electing an individual to any federal, state, county, city, town or village office" (Election Law § 1-102). Moreover, the general Election Law provisions apply where, as here, there is no inconsistency between Election Law § 9-209, which outlines the canvassing process and the grounds for challenging absentee ballots, and the provisions of Election Law article 15 governing village elections, which does not contain any provision authorizing or outlining a process or grounds for challenges or objections to absentee ballots. In other words, Election Law § 9-209 is not inconsistent with Election Law article 15 in that the former provides the procedure and grounds for challenging absentee ballots that the latter does not provide. In view of the foregoing, Election Law § 9-209 applies (see Election Law § 15-100; Matter of Conroy v Levine, 62 NY2d 934, 935 [1984]; Matter of Mason v Tapel, 71 AD2d 1050, 1050 [4th Dept 1979]).[FN9]
Viewing Election Law § 5-220 (2) together with Election Law § 9-209, there is no statutory authority, under the circumstances here, permitting a challenge by petitioners to the absentee ballots submitted by the challenged voters. In view of the statutory scheme, the only opportunity for an objection to be lodged during the post-election review of an absentee ballot is after such ballot has been deemed invalid following a review under Election Law § 9-209 (8) (e), which presupposes an initial review under Election Law § 9-209 (2). As noted, the improper registration of a voter is not one of the explicit grounds used to deem an absentee ballot invalid upon the initial review. Even assuming it was a ground, there is still no indication in the record that any review under Election Law § 9-209 (2) has occurred or, more importantly, that any determination under Election Law § 9-209 (8) (e) has been made here by the canvassing authority as to the invalidity of any absentee ballots and that such determination has been objected to — i.e., the statutory predicate for judicial review (see Election Law § 9-209 [8] [e]). There is likewise no explicit authority within Election Law § 9-209 permitting a court to either conduct that review or make that determination in the first instance.
Although Election Law § 15-138, as petitioners note, vests a court with the authority "to determine any question arising and make such order as justice may require," this statute does not give a court broader authority than what is provided under Election Law article 16 (see Matter of Mason v Tapel, 71 AD2d at 1050). That said, a judicial proceeding can be commenced to challenge absentee ballots (see Election [*6]Law § 16-106 [1]) but, as mentioned, this presupposes a determination in the first instance by the applicable canvassing authority as to the invalidity of an absentee ballot and an objection thereto. Furthermore, to the extent that the challenged registered voters were placed on a challenge list under Election Law § 5-220 (2) prior to the Village election, there is no statutory authority to convert or transform the challenge list into an absentee ballot challenge or to have the challenge list deemed as such.
Any action taken by a court in an election matter "must find authorization and support in the express provisions of the Election Law statute" (Matter of Delgado v Sunderland, 97 NY2d 420, 423 [2002] [internal quotation marks, brackets and citations omitted]). Guided by the governing statutes, and notwithstanding any attempt to frame the petition as a challenge to absentee ballots, we are constrained to conclude that, under the circumstances of this case, petitioners have no statutory basis here to challenge the absentee ballots, including the six ballots that Supreme Court directed not to be opened and counted. Thus, upon remittal, the only matter that Supreme Court has the authority to review in this proceeding, following the joinder of the necessary parties, is petitioners' challenge to the voter registrations.
The final question before us is what must be done with the absentee ballots. A stipulation dated March 30, 2023 provided that "[t]he absentee ballots at issue have not been opened or reviewed by the [i]nspectors [of election] at this time." It thus appears that the processes and the reviews contemplated by Election Law § 9-209 have not been conducted with respect to these absentee ballots.[FN10] This canvassing process must proceed immediately. In view of our determination, the remaining contentions are academic.
Garry, P.J., Aarons, Ceresia and McShan, JJ., concur.
Lynch, J. (concurring in part and dissenting in part).
I respectfully dissent in part and concur in part. To begin, in my view, the direct focus of this Election Law § 16-106 proceeding is to challenge the absentee ballots based on nonresidency, not to cancel each voter's registration (see Matter of Meyer v Whitney, 132 AD3d 1062, 1063 [3d Dept 2015], lv denied 26 NY3d 909 [2015]). The election having already taken place, the immediate concern is the validity of the absentee ballots. That is particularly so given that respondent Delaware County Board of Elections had yet to complete its investigation prior to the commencement of the proceeding. As such, the voters whose ballots were challenged are not necessary parties (see id.; compare Election Law § 16-108 [2]).
The pivotal question presented is whether, as respondent Stewart Cohen maintains, Supreme Court lacked subject matter jurisdiction to even address petitioners' challenge to the absentee ballots.[FN11] Resolution of this question requires a review of the process that governs the canvassing of ballots and the corresponding [*7]ability of candidates to raise an objection.
As to process, village elections are governed by Election Law article 15 (see Election Law § 15-100). In a general village election, in-person voting occurs only on election day (see Election Law §§ 8-600 [1]; 15-104 [3] [b]); voting by absentee ballot is authorized (see Election Law §§ 15-120 [1]; 15-122); and an absentee ballot may be counted provided it is "received by the village clerk not later than the close of the polls on election day" (Election Law § 15-120 [7]; compare Election Law § 9-209 [2]). In village elections, the village clerk serves as the election officer of the village, with responsibility for the general conduct of all village elections (see Election Law § 15-124 [1]). Under Election Law § 15-120 (5), the village clerk is required to examine absentee ballot applications to "determine from the information contained therein whether the applicant is qualified . . . to receive an absentee ballot" but "shall not determine whether the applicant is a qualified elector, said determination being reserved to the inspectors of election [pursuant to Election Law § 15-120 (9)]." Pertinent here, the village clerk is required to deliver all absentee ballots in the sealed envelopes to the board of inspectors of election on election day (see Election Law § 15-120 [8]). The inspectors of election are appointed in advance of the election by the village board of trustees (see Election Law § 15-116 [1]), and are charged with immediately conducting the canvass of ballots at the close of the polls on election night (see Election Law §§ 15-120 [9], [10]; 15-126 [1]). The canvass must be completed "without adjournment" and the inspectors of election must file their "certificates" stating the results with the village clerk "before nine o'clock in the forenoon of the following day" (Election Law § 15-126 [1]). Although the majority holds otherwise, these provisions outline the process for the canvassing of absentee ballots in a village election — a process that begins and ends immediately after the closing of the polls on election night. With respect to judicial review, Supreme Court is vested with "summary jurisdiction to determine any question arising and make such order as justice may require, in respect to village elections and registration therefor" (Election Law § 15-138).
By stipulation between the parties, all agreed that the absentee ballots were neither opened nor reviewed by the Village inspectors of election as of March 30, 2023 — i.e., the canvassing process was not conducted on election night. Correspondingly, the record includes a list of the voters whose voter registration had previously been challenged based on residency by petitioner Todd Pascarella — i.e., a challenge list that the Board was required to issue due to its incomplete investigation (see Election Law § 5-220 [2]). Supreme Court's order to show cause also directed respondent Diane Rossman, the Village Clerk, to "preserve all [*8]necessary records for the [c]ourt's determination of the issues" raised in this proceeding.
Given this context, Cohen maintains that Supreme Court lacked authority to review the ballots because the Village board of inspectors of election never made a decision as to the validity of the ballots during the canvassing process. I agree. Although Election Law § 15-138 authorizes Supreme Court to determine "any question" with respect to both the election process and "registration therefor," that broad authority necessitates that the framework for canvassing of the ballots is first completed (see Matter of Gross v Albany County Bd. of Elections, 3 NY3d 251, 258 [2004]). As more fully described below, it is only when ballots are deemed invalid during the canvassing process that a challenge may be made. For this reason, in my view, the matter should be remitted to Supreme Court for further proceedings, if any, following the completion of the canvassing process.
While Election Law § 15-120 provides the procedure for the canvassing of absentee ballots, it does not specify the type of challenges that can be made. Election Law § 15-100 specifies that all provisions of the Election Law "not inconsistent with this article" also apply in general village elections (see also Election Law § 1-102). In that regard, I agree with Cohen that Election Law § 9-209, as revised by the Laws of 2021, chapter 763, is relevant with respect to defining the scope of objections that may be made in the canvassing of absentee ballots, as there is no provision in Election Law article 15 that does so. Insofar as Election Law § 16-106 (4) requires strict compliance with the schedule or procedures in Election Law § 9-209, however, it bears emphasis that the pre-election canvassing procedures outlined in Election Law § 9-209 (2)-(6) do not apply here since neither early voting nor early canvassing of ballots is authorized in village elections. Election Law § 9-209 (5) — which precludes a candidate from objecting to the process for reviewing absentee ballot envelopes by the central board of canvassers — applies to the review procedure set forth in subdivisions (2), (3) and (4) which does not apply in village elections. To illustrate, under Election Law § 9-209 (6), the canvassing of absentee ballots received prior to election day and reviewed pursuant to subdivision (2) begins "[t]he day before the first day of early voting" (Election Law § 9-209 [6] [b]), and continues "[a]fter the close of the polls on the last day of early voting" (Election Law § 9-209 [6] [c]). In effect, the pre-election canvassing procedures of absentee ballots set forth in Election Law § 9-209 are based on a time frame measured by early voting — a format that does not exist in village elections. Nor does the post-election review process set forth in Election Law § 9-209 (8) apply because absentee ballots must be canvassed immediately upon the closing of the polls in a general village election (see Election Law § [*9]15-120 [9]). By comparison, absentee ballots may be received by the local board of elections up to seven days after election day and must be canvassed pursuant to Election Law § 9-209 (see Election Law § 8-412 [1], [2]).
As for the scope of challenges that may be made in the canvassing of absentee ballots, Election Law § 9-209 (2) (a) expressly requires a central board of canvassers in a board of elections to determine whether the voter whose name is on the absentee ballot envelope is on a registration poll record or a computer-generated list of registered voters. If the voter is not on either list, the central board of canvassers must set the ballot aside unopened for review pursuant to Election Law § 9-209 (8). While Election Law § 9-209 (2) (a) does not expressly so state, as a practical matter, such registration review would necessarily include a challenge list prepared by the local board of elections under Election Law § 5-220 (2).[FN12] Under Election Law § 9-209 (8) (e), where the local board of elections determines that a ballot is invalid, a candidate, among others, "shall be entitled to object." The point made is that a voter's registration is subject to review under Election Law § 9-209 in gauging the validity of an absentee ballot and, where the ballot is deemed invalid and set aside, a challenge is statutorily authorized. That standard governs the canvassing process the Village board of inspectors of election should apply when the ballots are canvassed. Correspondingly, Supreme Court retains authority under Election Law § 15-138 to determine any questions pertaining to registrations — i.e., if, by chance, during the canvassing process, the Village board of inspectors of election deems any of the subject absentee ballots invalid, Supreme Court would have jurisdiction to review any challenge made to that determination. Finally, from a practical perspective, I fully appreciate that Supreme Court has already conducted a full trial on the merits of the absentee ballot challenge. In doing so, however, the court bypassed the statutory canvassing process outlined in Election Law article 15 — a deviation that cannot be characterized as inconsequential (see Matter of Gross v Albany County Bd. of Elections, 3 NY3d at 258).
ORDERED that the order is reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: The elected terms of the predecessor Village Mayor and Trustees concluded on March 31, 2023.

Footnote 2: Supreme Court stayed its order until May 19, 2023, and this Court granted an additional stay until this appeal is decided.

Footnote 3: Petitioners have abandoned several voter challenges that were originally addressed at the hearing and in Supreme Court's decision.

Footnote 4: At oral argument, counsel for petitioners represented that the Board has not completed its investigation.

Footnote 5: Petitioners alleged that, in 2022, a proceeding was commenced to stay certification of the March 2022 Village election pending an investigation of the residency of certain voters. Although these voters were ultimately stricken from the voter rolls due to nonresidency, the order staying certification was issued after the 2022 Village election was certified and, consequently, the petition was dismissed as moot.

Footnote 6: As mentioned, because this is a proceeding challenging voter registration, the only statutory relief available in such a proceeding is the "cancellation of the registration" of the challenged voters (Election Law § 16-108 [1]).

Footnote 7: We note that the improper registration of a voter is not one of the explicit grounds used to deem an absentee ballot invalid upon the initial review under Election Law § 9-209 (2).

Footnote 8: After a ballot envelope has been initially reviewed under Election Law § 9-209 (2), it may also be set aside under Election Law § 9-209 (3) (f) or (3) (h) for a subsequent review under Election Law § 9-209 (8).

Footnote 9: Cohen's argument that this Court lacks subject matter jurisdiction is without merit.

Footnote 10: The record reflects that, per an email dated April 21, 2023, a ballot of one voter was challenged and "rejected for reasons not related to the residency issue." The ballot referenced in that email is not subject to this Court's decision.

Footnote 11: Cohen did not expressly challenge Supreme Court's jurisdiction at the hearing, but he did raise lack of subject matter jurisdiction as an affirmative defense in his answer.

Footnote 12: In fact, the record includes a list of registered voters, with a notation adjacent the name of each voter whose residency was challenged by Pascarella.